John RICE and Camilla L.
Rice, etc., Plaintiffs,

v.

Hal SMITH, etc., et al., Defendants.

Civil Action No. 97–A–715–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Dec. 19, 1997.

Kathleen A. Brown, Mark G. Montiel, Montgomery, AL, for John Rice and Camilla Rice.

John J. Park, Jr., Stanley E. Graham, Office of Attorney General, Montgomery, AL, Charles E. Grainger, Jr., Assistant Attorney General, Alabama Secretary of State's Office, Montgomery, Al, for Hal Smith and James Bennett.

James U. Blacksher, Birmingham, AL, Terry G. Davis, Terry G. Davis, P.C., Montgomery, AL, Solomon S. Seay, Jr., Montgomery, AL, Edward Still, Lawyers' Committee for Civil Rights Under Law, Director, Voting Rights Project, Washington, DC, for Darryl Sinkfield, Quinton Ross, Bernest Brooks, Rubin McKinnon, Andrew Hayden and State of Alabama.

Before JOEL F. DUBINA, Circuit Judge, MYRON H. THOMPSON, Chief Judge, and W. HAROLD ALBRITTON, District Judge.

*MEMORANDUM OPINION*

MYRON H. THOMPSON, Chief Judge.

This three-judge court, which has been empaneled pursuant to 28 U.S.C.A. § 2284, is confronted with a recently recurring issue: how a federal court confronted with a challenge to the apportionment of a State governing body should proceed when State courts have addressed, or appear poised to address, the challenge. This is also an important issue because it directly implicates federal-state relations.

In this lawsuit, plaintiffs John Rice and Camilla L. Rice (Rice plaintiffs) and plaintiffs Andrew Thompson, et al. (Thompson plaintiffs) challenge the apportionment plan of Alabama's State Legislature.[1] They claim that the plan impermissibly impinges in several ways on the equal protection clause of the fourteenth amendment: it violates the one person-one vote principle, it dilutes the voting strength of non-black voters, and it is a product of racial gerrymandering. The defendants are the Secretary of State of Alabama and the Probate Judge of Lee County, Alabama (State defendants), and the named representatives of a plaintiff class of African–American voters in a parallel State court proceeding (Sinkfield defendants). Jurisdiction is proper under 28 U.S.C.A. §§ 1331, 1343.

At oral argument on November 26, 1997, the Rice plaintiffs contended that we should stay this proceeding as to their claims because, although the State trial court has addressed the claims, the Alabama Supreme Court has yet to hear their appeal. The Thompson plaintiffs contended that we should proceed ahead as to their claims because the claims were not part of the State court proceeding.

I.

Twice now, this federal court has been confronted with a challenge to Alabama's legislative plan for the State House and Senate. In 1992 and 1993, two groups of plaintiffs—a group of African–American plaintiffs and a group of Republicans—brought two lawsuits challenging legislative apportionment.[2] The federal court stayed and eventually dismissed the cases in favor of a State court consent decree.[3]

Four years later, in 1997, the Rice plaintiffs brought the current federal lawsuit, essentially challenging the apportionment plan adopted in the 1993 State court consent decree. We stayed our hand again, finding that it appeared that the State court which had entered the 1993 consent decree was still available to consider the Rice plaintiffs' challenge. The Rice plaintiffs then presented their claims to the State court, which, after setting an aggressive trial schedule, found the claims to be without merit. The Rice plaintiffs have now appealed the State court judgment to the Alabama Supreme Court.[4]

In the meantime, and before the State court conducted its trial, the Rice plaintiffs amended their federal court complaint to add the Thompson plaintiffs as parties.[5]

As stated, the important issue for us is how to proceed on the Rice plaintiffs' and the Thompson plaintiffs' claims in light of the recent events in State court.

1. Some of the defendants dispute whether the Thompson plaintiffs were properly added to this litigation. The Thompson plaintiffs were added to the Rice plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 15, rather than by intervening pursuant to Federal Rule of Civil Procedure 24. By referring to the Thompson plaintiffs as "plaintiffs," we should not be understood to have resolved this dispute in this memorandum opinion today.

2. These two federal lawsuits are *Brooks v. Camp*, civil action no. 92–T–364–N (M.D.Ala.), and *Peters v. Folsom*, civil action no. 93–T–124–N (M.D.Ala.).

3. This court initially stayed the proceedings on the ground that the legislative process had not run its course. In the meantime, a state lawsuit was brought in which the court entered a consent decree adopting a reapportionment plan for the entire State legislature. *Sinkfield v. Bennett*, civil action no. 93–689–PR (Aug. 13, 1993). A question then arose as to whether the State court had authority to adopt the plan. We certified the question to the Alabama Supreme Court, which answered in the affirmative. *Brooks v. Hobbie*, 631 So.2d 883 (Ala.1993). We then dismissed the federal court proceedings.

4. State defendants' submission of documents filed in parallel State court proceedings, filed in this court December 11, 1997.

5. Order, filed September 23, 1997.

## II.

### A.

In *Growe v. Emison*, the United States Supreme Court held that federal judges are "required ... to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." 507 U.S. 25, 33, 113 S.Ct. 1075, 1080, 122 L.Ed.2d 388 (1993) (emphasis in original). Federal judges are to "prefer[] *both* state branches to federal courts as agents of apportionment." *Id.* at 34, 113 S.Ct. at 1081 (emphasis in original). The Court based this holding on a doctrine—the abstention doctrine—whose origins arise out of principles of federalism and reach back over half a century.[6] The Court explained that it has "required deferral, causing a federal court to 'sta[y] its hands,' when a constitutional issue in the federal action will be mooted or presented in a different posture following conclusion of the state-court case." *Id.* at 32, 113 S.Ct. at 1080 (quoting *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941)). It has allowed abstention "when the federal action raises difficult questions of state law bearing on important matters of state policy, or when federal jurisdiction has been invoked to restrain ongoing state criminal proceedings." *Id.* (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814–817, 96 S.Ct. 1236, 1244–1246, 47 L.Ed.2d 483 (1976)).

■ However, abstention within the reapportionment context differs in an important respect from that in other contexts, for it marks a unique burden shift within the doctrine. In other contexts, a federal court's decision to decline to exercise jurisdiction is disfavored and thus exceptional. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 1721, 135 L.Ed.2d 1 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.") (quoting *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)). But in the reapportionment context, when parallel State proceedings exist, the decision to refrain from hearing the litigant's claims should be the routine course.

The rationale behind this distinction lies in the inherently greater interest a State has in legislative reapportionment. As the Court explained in *Growe*, "the Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts." 507 U.S. at 34, 113 S.Ct. at 1081. "Absent evidence," the Court continued, "that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Id.* See also *Brooks v. Hobbie*, 631 So.2d 883, 889–90 (Ala. 1993) ("Redistricting is both a sensitive and political issue. There is no dispute that the

**6.** Indeed, some commentators have rejected the singular use of an abstention doctrine: "[I]t is more precise to refer to 'abstention doctrines,' since there are several distinguishable lines of cases, involving different factual situations, different procedural consequences, different policy considerations, and different arguments for and against their validity." 17A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4241, at 25.

We use the term "abstention" broadly to refer not only to the decision to "abstain" from hearing a plaintiff's claims, requiring dismissal, but also to the decision to "defer" to parallel state proceedings while staying the federal court litigation. Although the United States Supreme Court differentiated in *Growe*, 507 U.S. at 32 n. 1, 113 S.Ct. at 1080 n. 1, between abstention and deferral, the lower courts and other authorities have continued to use the term "abstention" to describe both actions. *See, e.g., Benavidez v. Eu*, 34 F.3d 825, 832–33 (9th Cir.1994) (distinguishing between "deferral abstention" and "dismissal abstention"); 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure (2d ed. Supp. 1997) § 4241, at 1 ("to change the terminology now would be confusing rather than clarifying.").

legislature has the initial responsibility to act in redistricting matters ... However, in the event the legislature fails to act, the responsibility shifts to the state judiciary.") (citations omitted). The Court also focused on the more universal practical factor in favor of abstention, "the nature of the relief requested," *Growe,* 507 U.S. at 35, 113 S.Ct. at 1081, and observed that a State "can have only one set of legislative districts." *Id.*

### B.

Relying on these principles, this court has twice deferred or stayed federal proceedings in favor of State court proceedings in which there was a challenge to Alabama's legislative apportionment. In 1993, when the federal court stayed and eventually dismissed the two original cases challenging State apportionment, it relied on *Growe.* And more recently, in the fall of 1997, when we stayed proceedings on the Rice plaintiffs' claims, we again expressly relied on *Growe.*

■ The Rice plaintiffs admit that we cannot consider their claims in the face of the State court decision on their claims. Relying on *Growe,* however, they ask that we stay, rather than dismiss, their claims. We cannot agree. Because the State court has adjudicated the merits of their claims, both res judicata and the *Rooker–Feldman* doctrine preclude this court's review of that decision.[7] The Rice plaintiffs argue that because the Alabama Supreme Court could potentially fail to grant timely review of their appeal, this court should retain jurisdiction so as to provide them with a forum in which to obtain substantive review of the State court decision. Not only does this argument contravene the above-stated *Rooker–Feldman* doctrine—under which only the United States Supreme Court can entertain a proceeding to reverse or modify a State court judgment on

the merits[8]—but the United States Supreme Court expressly rejected such an argument in *Growe,* when it wrote: "We fail to see the relevance of the speed of appellate review. [Precedent] requires only that the state agencies adopt a constitutional plan 'within ample time ... to be utilized in the [upcoming] election ... It does not require appellate review of the plan prior to the election.'" 507 U.S. at 35, 113 S.Ct. at 1081 (citations omitted). The Rice plaintiffs further note that the Alabama Supreme Court could reverse the State court decision and find that the State court was without jurisdiction from the start. This argument, however, is a compelling reason as to why the dismissal of the Rice plaintiffs' claims should be without prejudice, which we will do.

■ With regard to the Thompson plaintiffs' claims, we believe we should again take our instructions from *Growe* and stay our hand. First, by ruling on the merits of the Rice plaintiffs' constitutional claims in a timely fashion, the State court has indicated not only its willingness to entertain challenges to Alabama's redistricting plan, but also its ability to resolve such claims in an exigent manner. The United States Supreme Court has made clear that, "Absent evidence that the[] state branches will timely fail to perform [the redistricting] duty," a federal court should not interject itself into the State's matter. *Growe,* 507 U.S. at 34, 113 S.Ct. at 1081. While it is true that the Thompson plaintiffs have not had their claims resolved by the State court, we are convinced that the State court is willing or able to hear such claims. Indeed, the State court offered the Thompson plaintiffs an opportunity to intervene in the Rice plaintiffs' proceedings, but the Thompson plaintiffs declined to do so. We know of no reason why the State court would not still entertain the Thompson plaintiffs' claims.[9]

---

7. District courts are courts of original jurisdiction; only the Supreme Court can entertain a proceeding to reverse or modify a State court judgment on the merits. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

8. *Id.*

9. In the order entered on August 14, 1997, we not only "stayed" our hand, we "directed" the

Rice plaintiffs to intervene in the State court proceedings. The Rice plaintiffs have taken issue with whether the State court proceeding was in a posture that warranted our stay and whether we had the authority to issue a directive to a party as to what to do in another proceeding. Whether our earlier decision was premature or authorized is an issue we need no longer reach because the Rice plaintiffs did intervene and the State court has now ruled on their claims. Moreover, since our order of August 14, 1997, the calculus has changed to make *Growe* deferral

Second, the State defendants stated at oral argument, without refutation from the Thompson plaintiffs, that a decision by us in favor of the Thompson plaintiffs would probably impact the remainder of the plan, including the part addressed by the State court recently. Alabama "can have only one set of legislative districts." *Growe,* 507 U.S. at 35, 113 S.Ct. at 1081.

Third and finally, having participated in the creation of the reapportionment plan and having recently heard evidence as to the constitutionality of the plan, the State court is far better equipped to handle the Thompson plaintiffs' claims, as well as those of any future litigant interested in the *outcome of* the proceedings. This factor reinforces the conclusion that we should defer to the State court.[10]

An appropriate judgment will be entered.

## ORDER

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court:

1. The claims of plaintiffs John and Camilla L. Rice are dismissed without prejudice;
2. This case is stayed as to the claims of plaintiffs Andrew Thompson, et al.

It is further ORDERED that the following motions are denied as moot: the Rice plaintiffs' motion for class certification, filed May 2, 1997; the Rice plaintiffs' motion for a preliminary injunction, filed May 2, 1997; the Rice plaintiff's motion for reconsideration of this court's order of August 14, 1997, filed August 28, 1997; the Rice plaintiffs' motion to dismiss the Sinkfield defendants, filed October 24, 1997; the Rice plaintiffs' motion to amend and supplement the complaint, filed October 24, 1997; the Rice plaintiffs' motion to compel discovery requests and for sanc-

tions, filed November 11, 1997; the Rice plaintiffs' request to schedule an evidentiary hearing, filed November 25, 1997; the Sinkfield defendants' motions to dismiss and/or motions for judgment on the pleadings, filed July 10, 1997, October 9, 1997, October 27, 1997, November 25, 1997. It is further ORDERED that the Sinkfield defendants' motion for leave to withdraw their second motion to dismiss, filed September 23, 1997, is granted.

It is further ORDERED that the disposition of the following motions are stayed pursuant to the general stay issued today: the State defendants' motion for an order to show cause why the Sinkfield defendants should not be dismissed, filed November 10, 1997; the State defendants' motion for summary judgment, filed November 25, 1997; the Permanent Legislative Committee's motion to intervene as defendants, filed November 7, 1997.

ALBRITTON, District Judge, concurring.

I write in concurrence to clarify my view of the limited nature of our action in this case, and to avoid future citation of our opinion as precedent for propositions which are not intended.

The Sinkfield defendants have asked the court throughout the course of this litigation to hold that a party who wishes to challenge the constitutionality of a state's legislative apportionment or congressional districting must first take the case to a state court as a prerequisite to a federal action. In their proposed scheme, only when the state court fails to act expeditiously may the claim then be brought to federal court. While footnote 10 of the majority opinion correctly states that we do not reach this issue, I believe that the footnote, without more explanation,

---

clearly appropriate. As stated, the State court has not only reaffirmed jurisdiction over the State legislative plan, it has entertained and resolved claims almost identical to those now asserted by the Thompson plaintiffs.

**10.** In *Growe,* the United States Supreme Court stated that federal courts are required "to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, *has begun* to address that highly political task itself." 507 U.S. at 33, 113 S.Ct. at 1080

(emphasis in original and added). At oral argument, the Sinkfield defendants suggested that, under a logical extension of *Growe,* a federal court is required to abstain in favor of State courts even if there is no pending or ongoing State court proceeding. Before being eligible for relief in federal court, according to the Sinkfield defendants, a federal plaintiff must be able to show that he or she first sought relief in State court and the State court failed to entertain his or her claim at all or in a timely manner. We do not reach this issue.

might lend more credence to the Sinkfield's proposition than is due. I would only defer to an existing state court proceeding. I would not abstain because the Plaintiff had not first filed suit in state court.

In *Growe* the Supreme Court said:

In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the state, through its legislative or judicial branch, has begun to address that highly political task itself.

*Growe*, 507 U.S. at 33, 113 S.Ct. at 1080 (emphasis in original).

Deferring to the state's legislature is quite different from requiring a party to first seek relief in a state court when there is no ongoing case. There is only one legislature, and it has the primary responsibility for apportionment and districting.[1] Only in the absence of legislative action does the judicial branch come in, and then the question arises as to which state court will act.[2]

*Growe* requires deferral only when the state "*has begun to address*" the issue. Deferral to the legislative branch can be justified even if no proposed legislation is pending at the time, because of the legislature's continuing duty in this area, and because of the legislature's freedom to act on any issue at any time. This is not so with the judicial branch, which generally cannot act unless someone first files the appropriate suit in some court. This makes *Growe*'s requirement of deferral to a branch of state government which "has begun" to address the issue highly significant when applied to the judicial branch. There is simply no way that the state judicial branch can be said to "ha[ve] begun" to act unless there is a pending case in a state court which has jurisdiction over the issue.

This court's action in this case, therefore, should not be taken to suggest in any way that a person who wishes to raise a constitutional challenge to congressional and legislative districts must first file a new lawsuit in some state court. We have deferred to a state court which "has begun to address" the issue of the constitutionality of state legislative districts under the 1990 census. That is the issue which was before the state court, and that court has held that it retained jurisdiction of the case to enforce its judgment.[3]

The Plaintiffs argue that deferral is not appropriate in this case because it is the state court's redistricting plan itself that they challenge as being unconstitutional. There was no appeal from the state court in 1993 because there was a consent decree. The Plaintiffs say that the parties in state court consented to an unconstitutional plan and that they, as non-parties to the consent decree, should be able to challenge the plan now in federal court.

I agree with the Plaintiffs that *Growe* does not prohibit this court from considering their challenge, and we have not held that it does. We have found it to be prudent, and in furtherance of the concept of federalism, however, to defer under the particular cir-

---

1. Of course, giving the legislature primary responsibility for districting is not required by any federal law or Constitutional provision. A state may choose another method. Indeed many states have chosen such a method in an attempt to depoliticize (as much as possible) the duty of districting. *See* Jeffrey C. Kubin, *The Case for Redistricting Commissions*, 75 Tex. L.Rev. 837 (1997) (discussing 17 states which have adopted redistricting commissions, and the various forms that those commissions may take). Apparently the idea of a redistricting commission is being considered in Alabama's neighboring state of Florida. *See* George L. Waas, *The Process and Politics of Legislative Reapportionment and Redistricting under the Florida Constitution*, 18 Nova L.Rev. 1001, 1034–35 (1994).

2. At least one state apparently uses a specialized three-judge court, similar to this three-judge court, when a court must redistrict or reappor-

tion. *See Growe*, 507 U.S. at 28, 113 S.Ct. at 1077 (referencing fact that "Minnesota Supreme Court appointed a Special Redistricting Panel (composed of one appellate judge and two district judges) to preside over the case."). A specialized court may avoid duplicative litigation at the state level, and could also avoid the resentment that sometimes arises when a judge elected by a single circuit's voters takes action which affects the entire state.

3. Florida state courts apparently dealt with the problem of multiple suits throughout the state by having the state supreme court retain jurisdiction. *See In re Apportionment Law Appearing as Senate Joint Resolution 1 E, 1982 Special Apportionment Session; Constitutionality Vel Non*, 414 So.2d 1040, 1052 (1982) ("we retain exclusive state jurisdiction to consider any and all future proceeding [sic] relating to the validity of this apportionment plan").

cumstances of this case. Those circumstances are that the state court adopted the challenged plan before the Supreme Court enunciated new legal principles to be applied in reapportionment cases, specifically in what has been referred to as "race-based" districting. *See Abrams v. Johnson,* — U.S. —, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997); *Bush v. Vera,* 517 U.S. 952, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996); *Shaw v. Hunt,* 517 U.S. 899, 116 S.Ct. 1894, 135 L.Ed.2d 207 (1996); *Miller v. Johnson,* 515 U.S. 900, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995); *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); and *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). This court determined that *because of that,* it would be preferable for the state court to have an opportunity to review its plan in light of the new Supreme Court decisions, with appellate review available in the Alabama Supreme Court, and possibly the Supreme Court of the United States.

The Rice Plaintiffs intervened in the state court, at our direction. They now say that we were without authority to direct that intervention. Be that as it may, no motion for reconsideration was filed here before the intervention, and the state court has acted. Since we are dismissing the claims of the Rice plaintiffs, they are free to seek appellate review of our decision to defer.

The Thompson Plaintiffs are free to intervene in the state court case to seek determination there of the constitutionality of the plan as it relates to their districts, with appellate review available if necessary. If the state court is unable or unwilling to entertain their claims, or if the Alabama Supreme Court should hold in the Rice appeal that the Circuit Court of Montgomery County did not have jurisdiction over the Rice claims, then I would be prepared to let the case proceed in this court, subject, of course, to consideration of pending motions and defenses, including the defense of laches.

I wish to emphasize that it is only because (1) a state court has held that it has retained jurisdiction over the state legislative reapportionment plan based on the 1990 census, and (2) very substantial changes were made by the Supreme Court of the United States in the law governing legislative reapportionment after that plan was adopted, that I agree to defer to the state trial court, with the possibility of appellate review of its decision. In the absence of either of those facts, I would have favored hearing the constitutional attack on the consent decree entered by the state court. I do not believe that this court's decision should be viewed as going beyond that, and, therefore,

I concur.