Andrew D. THOMPSON,
et al., Plaintiffs,

v.

Hal SMITH, etc., et al., Defendants.

No. Civ.A. 97–A–715–E.

United States District Court,
M.D. Alabama,
Eastern Division.

July 2, 1999.

David R. Boyd, Balch & Bingham, Montgomery, AL, for movant represented by Boyd.

Stanley E. Graham, Waller, Lansden, Dortch & Davis, Nashville, TN, for defendant represented by Graham.

Jeffrey G. Hunter, Montiel & Brown, P.C., Montgomery, AL, for plaintiff represented by Hunter.

Jordan Dorman Walker, Jr., Balch & Bingham, Montgomery, AL, for movant represented by Walker.

Before JOEL F. DUBINA, Circuit Judge, W. HAROLD ALBRITTON, Chief District Judge, and MYRON H. THOMPSON, District Judge.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The question before this three-judge federal court, empaneled pursuant to 28 U.S.C.A. § 2284, is whether claims brought by a group of voters who are challenging a state legislative districting plan are barred by an earlier final judgment in a state lawsuit in which two other voters challenged the same plan. For the reasons that follow, we hold, on motions for summary judgment, that this federal lawsuit is barred in part only.

## I. SUMMARY–JUDGMENT STANDARD

The summary-judgment standard applicable here almost needs no repeating. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

This federal litigation has a long and complex history involving two lawsuits in different fora. The first is a *state lawsuit* in the Circuit Court of Montgomery County, Alabama, that resulted in a consent judgment approving a redistricting plan for the Alabama House of Representatives and Senate.[1] The second is this *federal lawsuit* in which certain Alabama voters now seek to challenge the state-court redistricting plan on grounds of vote dilution, violation of the one-person-one-vote principle, and race-based gerrymandering.

There are four groups involved in these cases. First, there are the *Rice plaintiffs,* two white persons who initiated the federal lawsuit.[2] Second, there are the *Thompson plaintiffs,* a group of white persons whom the Rice plaintiffs later added to their complaint.[3] Third, there are the *state defendants* one of whom was also a defendant in the state lawsuit.[4] And, lastly, there are the *Sinkfield parties,* a group of African–Americans who were successful plaintiffs in the state lawsuit and were later named as defendants in this federal suit.[5]

The sequence of events leading up to the current dispute is as follows.

*August 13, 1993:* The state court entered a consent judgment between the Sinkfield parties and the Secretary of State of Alabama approving a redistricting plan for the Alabama legislature.

*May 2, 1997:* The Rice plaintiffs filed this federal lawsuit challenging the state-court plan on the following three grounds: vote-dilution, violation of the one-person-one-vote principle, and race-based gerrymandering.

*August 14, 1997:* This court, relying on *Growe v. Emison,* 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), directed the Rice plaintiffs to intervene in the state lawsuit. They did so on August 28, 1997.

*August 29 and September 9, 1997:* After intervening in the state lawsuit, the Rice plaintiffs moved to amend their federal complaint to add the Thompson plaintiffs

---

1. *See Sinkfield. v. Camp,* CV–93–689–PR, slip op. (Ala.Cir.Ct. Aug. 13, 1993).

2. The Rice plaintiffs are: John Rice and Camilla L. Rice.

3. The Thompson plaintiffs are: Andrew D. Thompson, Peggy C. Kelly, Gonzalo F. Montiel, Ann G. Hunter, Daniel P. Brown, W. Ricardo Montiel, Karen D. Outlaw, Kelly Brasher, and Bibb Gunter.

4. The state defendants are: Hal Smith, probate judge of Lee County, James Bennett, Secretary of State of Alabama, and the State of Alabama. The defendant in the state lawsuit was James Bennett, in his official capacity as Secretary of State of Alabama.

5. The Sinkfield parties are: Darryl Sinkfield, Quinton Ross, Bernest Brooks, Rubin McKinnon, and Andrew Hayden.

as parties. The Thompson plaintiffs (with the exception of Andrew D. Thompson) reside in different legislative districts from the Rice plaintiffs. In the amendments, the Thompson plaintiffs essentially adopted the Rice plaintiffs' claims of vote-dilution, violation of the one-person-one-vote principle, and race-based gerrymandering.

*October 15, 1997:* This court granted the Rice plaintiffs' motions to amend, and the Thompson plaintiffs were added as parties.

*October 17, 1997:* The state court invited the Thompson plaintiffs to intervene in the state-court action, but they refused.

*November 20, 1997:* After hearing the merits, the state court dismissed the Rice plaintiffs' claims. The state court found that their one-person-one-vote and vote-dilution claims lacked merit and that there was no evidence that race was a predominant factor in the redistricting process sufficient to support their race-based gerrymandering claim.

*December 19, 1997:* The Rice plaintiffs turned again to this federal court, and, in light of the state-court judgment, we dismissed their complaint without prejudice on the basis of res judicata and the *Rooker–Feldman* doctrine.[6] *See Rice v. Smith,* 988 F.Supp. 1437, 1440 (M.D.Ala.1997) (three-judge court). Relying on *Growe v. Emison,* we also stayed the Thompson plaintiffs' claims in order to provide them with another opportunity to file their claims in state court. *See id.* at 1441.

*December 18, 1998:* The Rice plaintiffs appealed the state-court decision, and, on this date, the Alabama Supreme Court dismissed their appeal as "moot." *Rice v. Sinkfield,* 732 So.2d 993 (Ala.1998) (per curiam). The court reasoned that, because the "next legislative election is scheduled for the year 2002," and because "[b]y that time, the report of the 2000 federal census is scheduled to be released, ... the elections held in 2002 and subsequent years will be governed not by the current con-

sent judgment, but by a new districting plan that is based on the 2000 federal census." *Id.*

*January 27, 1999:* This federal court required that the parties show cause as to why this federal lawsuit should not be dismissed in light of the decision of the Alabama Supreme Court.

*February 5, 1999:* The Thompson plaintiffs responded by asking that this court proceed with their claims.

*April 30, 1999:* This federal court treated as motions for summary judgment certain motions to dismiss and for judgment on the pleadings, filed earlier by the state defendants and the Sinkfield parties, and the court set the motions for briefing. These summary-judgment motions are now before us.

## III. DISCUSSION

The motions for summary judgment present two issues: first, whether the Thompson plaintiffs should be barred from further pursuit of their claims in this federal court because they failed to take advantage of the opportunity we gave them to pursue those claims in state court; and, second, whether the Thompson plaintiffs' claims are barred by the state-court judgment based on the principle of res judicata.

### A. *Deferral*

In the order entered December 19, 1997, relying on *Growe v. Emison,* we deferred to the on-going state lawsuit, stayed our hand until the state court system had fully addressed the claims being pursued by the Rice plaintiffs, and suggested that, in the meantime, the Thompson plaintiffs should seek intervention in that lawsuit to present their claims. *See Rice,* 988 F.Supp. at 1440. The Thompson plaintiffs have now returned to this court, contending that, because the Alabama Supreme Court has held that it is too late to afford redress for

---

**6.** *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314–15, 75 L.Ed.2d 206 (1983).

the upcoming legislative elections, the Alabama courts are now closed to them and they should now be allowed to proceed in this court. The state defendants and the Sinkfield parties respond that the Thompson plaintiffs should be barred from further pursuit in this case because they failed to intervene in the state lawsuit. We agree with the Thompson plaintiffs.

■ Admittedly, we earlier deferred to the state court because the state-court proceeding was still on-going and "the State court [was] willing or able to hear such claims." *Id.* at 1440. However, this circumstance no longer obtains. As the Thompson plaintiffs correctly point out, the Alabama Supreme Court has held that their claims are moot, and, as a result, the Alabama courts are now essentially closed to them. With these changed circumstances, there is no longer a state proceeding to which to defer.[7]

■ We also cannot accept the contention of the state defendants and the Sinkfield parties that the Thompson plaintiffs, by not intervening in the state lawsuit, essentially defaulted on their claims in this court. The United States Supreme Court in *Growe* made clear that federal courts and state courts have concurrent jurisdiction to entertain challenges to redistricting plans and that, as a result, both courts are open to such claims. *See* 507 U.S. at 32, 113 S.Ct. at 1080. *Growe* stands only for the proposition that the federal court must 'defer' to any state-court redistricting effort; it does not say that the federal court must dismiss its own proceedings. *See id.* at 32 n. 1, 113 S.Ct. at 1080 n. 1. Indeed, in *Growe*, the Supreme Court acknowledged that, after the state court had completed its proceeding, the federal court later rightfully took up the remaining claim under § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973, *see* 507 U.S. at 38–39, 113 S.Ct. at 1083; *Growe*

did not require that the plaintiffs there pursue their § 2 claim in state court as well.

Similarly, here, now that the Alabama courts have completed their involvement in the legislative redistricting, this court can take up the Thompson plaintiffs' claims—subject, of course, to any res judicata and other defenses that may follow from the state judgment. *See id.* at 35–36, 113 S.Ct. at 1082 (federal court, under principles of federalism and comity embodied in Full Faith and Credit Act, 28 U.S.C.A. § 1738, required to give "legal effect" to state redistricting judgment).

### B. *Res Judicata*

■ We therefore now turn to the question whether the judgment obtained by the Rice plaintiffs in state court bars the Thompson plaintiffs' claims in this court. A federal court must give preclusive effect to state-court decisions "whenever the court of the State from which the judgment emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *see also Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986). The court must therefore look to Alabama law to determine whether an Alabama state court would give preclusive effect to the state-court decision.

"Under Alabama law, the essential elements of res judicata are: '(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits.' If all of these elements are met, any claim that was or could have been adjudicated in the previous action is precluded. If even one element of the four is not met, however, res judicata is not applicable." *N.A.A.C.P. v. Hunt*, 891 F.2d

---

7. A closer reading of *Growe v. Emison* could lead to the conclusion that a federal court is required to defer to the state court's *remedial efforts* only, not to the state-court proceeding altogether. In this instance, of course, we deferred to the entire state-court proceeding. We need not resolve whether deferral should have been limited to the state court's remedial efforts only.

1555, 1560 (11th Cir.1990) (citations omitted).[8]

■ Although the Alabama Supreme Court dismissed the appeal from the state-court judgment as moot, the first requirement, a prior judgment on the merits, is still met because the appellate court did not vacate the state-court judgment and thus that judgment is still valid. *See, e.g., Gross v. QMS, Inc.,* 669 So.2d 839, 840 (Ala.1995); *Masonry Arts, Inc. v. Mobile County Comm'n,* 628 So.2d 334, 335 (Ala. 1993); *Arrington v. State ex rel. Parsons,* 422 So.2d 759, 760 (Ala.1982). It is also undisputed that the second requirement, a court of competent jurisdiction, is met. Therefore, the two remaining questions are whether there is a substantial identity of parties and whether the same causes of action were presented.

### 1. Identity of Parties

■ Alabama law defines 'identity of the parties' broadly—as broadly as due process allows. *See Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm'n,* 401 So.2d 764, 770 (Ala.1981). The key inquiry is whether the interests of the party against whom res judicata is asserted were adequately represented by a party to the prior lawsuit. *See id.* When the party against whom res judicata is asserted was not itself a party to the prior lawsuit, however, the court must undertake a further inquiry to determine whether the application of res judicata would offend the due process guarantees of the fourteenth amendment to the United States Constitution. *See Richards v. Jefferson County,* 517 U.S. 793, 797 n. 4, 116 S.Ct. 1761, 1765 n. 4, 135 L.Ed.2d 76 (1996).

■ There is little doubt that in state court the Rice plaintiffs adequately represented the interests now asserted by the Thompson plaintiffs here. The Thompson plaintiffs did not enter this lawsuit as intervenors seeking to assert a separate interest in the subject matter of this law suit, *see* Fed.R.Civ.P. 24 (intervention), but instead were joined as parties by amendment of the Rice plaintiffs' complaint, *see* Fed.R.Civ.P. 15 (amendment), Fed. R.Civ.P. 20 (permissive joinder of parties). Together with the Rice plaintiffs, they sought to be designated as representatives of all non-black Alabama voters. The Rice plaintiffs sought the same designation in state court, and all of the Thompson plaintiffs are members of this putative class. The Thompson plaintiffs thus cannot be characterized as strangers to the state-court action and are more properly characterized as alter-egos of the Rice plaintiffs with identical or closely-aligned interests. Accordingly, we conclude that the Thompson plaintiffs were adequately represented in state court by the Rice plaintiffs. *See Aerojet–General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.) (subsequent suit by a non-party may be precluded "if one of the parties to the suit is so closely aligned with [the non-party's] interests as to be his virtual representative"), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

The court's inquiry cannot end here, however, because the United States Supreme Court in *Richards* made clear that there is a due-process component to res judicata as well. In that case, the Supreme Court held that, as a matter of federal due process, prior taxpayer litigation challenging an occupation tax in Jefferson County, Alabama, could not bind a different group of Alabama taxpayers challenging the same tax even though the courts below had found adequate representation under Alabama law. The Court ob-

---

**8.** Res judicata is usually raised as an affirmative defense in the answer to a complaint. *See* Fed.R.Civ.P. 8(c). However, "[a]lthough Rule 8(c) includes res judicata and collateral estoppel on the list of affirmative defenses that must be pleaded specifically by answer, these defenses may be raised for the first time on a motion for summary judgment." *Kachler v. Taylor,* 849 F.Supp. 1503, 1515 (M.D.Ala.1994) (Thompson, J.). Here, the opportunity of raising either defense was unavailable until the state court had rendered its decision.

served that the party against whom res judicata had been asserted had received no notice of the prior suit and had been given no opportunity to be heard. *See Richards,* 517 U.S. at 799, 116 S.Ct. at 1766 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Court further observed that the plaintiffs in the prior litigation did not purport to sue on behalf of a class, and the Court found no reason to suppose that the earlier court took care to protect the interests of the unrepresented parties. In other words, *Richards* suggests that some of the concerns that should inform a court in its due-process analysis include whether the plaintiffs in the prior litigation purported to sue on behalf of a class that includes the plaintiff against whom res judicata is asserted, whether there was "full and fair consideration of the common issue," *id.* at 801, 116 S.Ct. at 1767, whether the non-party had been informed that the original lawsuit is pending, *id.* at 799, 116 S.Ct. at 1766; and whether the non-party could "choose for himself whether to appear or default, acquiesce or contest." *Id.*

This case, therefore, presents a situation entirely different from that in *Richards.* The state court invited the Thompson plaintiffs to participate in the prior suit, and this court twice suggested that they do the same.[9] The Thompson plaintiffs thus had notice of the state litigation and were given ample opportunity to be heard. The Rice plaintiffs, moreover, expressly sought to represent a class that clearly includes the Thompson plaintiffs, and there is every reason to conclude that the state court took care to protect the interests of nonparty class members. The Thompson plaintiffs were fully aware of these class claims and yet did nothing. Under these circumstances, the court cannot conclude that it would offend due process to bind the Thompson plaintiffs to the prior litigation, and we turn next to the issue of whether the same causes of actions were present.

### 2. Same Causes of Action

■ To determine whether two lawsuits present the same causes of action, Alabama courts apply a test "that in certain respects is similar to, but which is not the same as, the 'same transaction' test" in the Restatement (Second) of Judgments. *Equity Resources Management, Inc. v. Vinson,* 723 So.2d 634, 637 (Ala.1998). Because there is no mathematically precise definition for when there is an identity of causes of action, the test for making such determination has many formulations, but the principal inquiries are essentially two: (1) whether the claims 'arise out of' the same evidence, wrongful acts or disputes, *see id.* at 637, 638, or present the same issues (in particular, factual ones), *see, e.g., Selma Foundry & Supply Co. v. Peoples Bank & Trust Co.,* 598 So.2d 844, 848 (Ala.1992); and (2) whether the claims would be subject to proof by the same evidence, *Vinson,* 723 So.2d at 637. Also probative, but not determinative, is "the identity [of] or differences in the forms of the two actions." *Id.* at 638.

### a. Vote–Dilution and One–Person–One–Vote Claims

Upon their addition as parties to the case, the Thompson plaintiffs simply adopted the Rice plaintiffs' one-person-one-vote and vote-dilution claims by reference to the Rice plaintiffs' complaint. Because the Rice plaintiffs repeated these claims verbatim in their state-court complaint, the Thompson plaintiffs' one-person-one-vote and vote-dilution claims before this court are identical in form to the Rice plaintiffs' one-person-one-vote and vote-dilution claims presented in state court.

■ The one-person-one-vote claims in both state and federal court allege that the

9. This court also ordered the Rice plaintiffs to file with the court all pleadings and other documents they filed in the state-court action, together with all orders issued by the state court. *See* order entered September 23, 1997. The Thompson plaintiffs were thus kept fully abreast of the state-court proceeding.

state's current redistricting plan violates the equal-protection principles articulated in *Reynolds v. Sims*, 377 U.S. 533, 577, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506 (1964), in that the plan as a whole fails to establish population equality within constitutionally acceptable percentage variations. The claims in both cases arise out of the formation of the state's current redistricting plan, present identical issues of fact, and are subject to proof by the same plan-wide evidence of population disparities and other factors considered by the state court; in other words, the plaintiffs in both state and federal court would arguably prove their claim by showing that a district anywhere in the State exceeded the permissible relative variations in population size. The claims are therefore identical in substance and present the same causes of action for purposes of res judicata.

 The vote-dilution claims in state and federal court allege that the defendants intentionally underpopulated the majority-black districts and overpopulated the majority-white districts in the current redistricting plan for the purpose of diluting white voting strength in violation of the equal protection clause of the fourteenth amendment. Like the one-person-one-vote claims, the vote-dilution claims in both cases arise out of the formation of the state's current redistricting plan. The vote-dilution claims, however, would require proof of racial motivation. The vote-dilution claims would nevertheless be subject to the same proof in federal court as they were in state court and are identical in substance for purposes of res judicata; in other words, the plaintiffs in both state and federal court would arguably prove their claim by showing that a district any where in the State had been intentionally

created with an underpopulated black majority so as to dilute white voting strength.

### b. Race–Based Gerrymandering Claim

 Each of the Thompson plaintiffs alleges that the House and Senate district in which he or she lives was racially gerrymandered in violation of the equal protection clause of the fourteenth amendment. Only Andrew Thompson, however, challenges a district named in the Rice plaintiffs' state-court complaint, and, in response to a motion by the state defendants, the state court expressly limited the Rice plaintiffs' gerrymandering claim to the districts in which the Rice plaintiffs reside: House Districts 79 and 83 and Senate Districts 27 and 28. The other Thompson plaintiffs live in districts outside of those addressed by the state court, and their gerrymandering claims could not have been asserted by the Rice plaintiffs for lack of standing.[10]

Andrew Thompson claims that the State has adopted a plan which, on the basis of race, gerrymanders Senate District 28 and House District 82. Thompson thus raises the same issue as to his Senate district— whether Senate District 28 was racially gerrymandered—raised by the Rice plaintiffs in state court. The other Thompson plaintiffs, by contrast, raise issues specific to the districts in which they live and which were not raised in the state-court proceeding, as does Thompson in regard to House District 82.

 Furthermore, the evidence that would be required to establish a race-based gerrymandering claim is necessarily district-specific. A plaintiff must show either (1) that the district in which he or she lives "has no rational explanation except as an effort to separate voters on the basis of

10. Voters entitled to pursue a gerrymandering claim are limited to those who reside within the racially gerrymandered district or those who can show by "specific evidence" that they suffer the "special harms" associated with "personally be[ing] subjected to a racial classification" under the redistricting plan. *United States v. Hays*, 515 U.S. 737, 744–45,

115 S.Ct. 2431, 2436, 132 L.Ed.2d 635 (1995); *see also Bush v. Vera*, 517 U.S. 952, 957–58, 116 S.Ct. 1941, 1951, 135 L.Ed.2d 248 (1996) (plurality opinion). The district-specific nature of a gerrymandering claim is in contrast to the plan-wide nature of a vote-dilution or one-person-one-vote claim.

race," or (2) that, in redrawing the district, "the legislature subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations." *Miller v. Johnson,* 515 U.S. 900, 903, 916, 115 S.Ct. 2475, 2482, 2488, 132 L.Ed.2d 762 (1995); *see also Bush v. Vera,* 517 U.S. 952, 959, 116 S.Ct. 1941, 1952, 135 L.Ed.2d 248 (1996); *Shaw v. Reno,* 509 U.S. 630, 644, 113 S.Ct. 2816, 2825, 125 L.Ed.2d 511 (1993). Different evidence would therefore be required to establish the Thompson plaintiffs' gerrymandering claims, save that of Andrew Thompson's Senate claim, than was required in state court to prove the Rice plaintiffs' claims.

Although the state court did examine how the plan as a whole was drafted, it focused primarily on the manner in which the drafters drew House Districts 79 and 83 and Senate Districts 27 and 28. Indeed, there is little that Andrew Thompson could add to the evidence presented by the Rice plaintiffs on Senate District 28. As to House District 82 and for the other Thompson plaintiffs, though, the evidence presented in state court would largely not address their claim.

■ The court must therefore conclude that only Andrew Thompson's race-based gerrymandering claim for Senate District 28 presents the same cause of action presented by the Rice plaintiffs in state court.

In conclusion, we hold that the motions for summary judgment filed by the state defendants and the Sinkfield parties should be granted as to the vote-dilution and one-person-one-vote claims of all the Thompson plaintiffs and as to Andrew Thompson's race-based gerrymandering challenge to Senate District 28, and otherwise denied. An appropriate order will be entered.

### ORDER

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that the motions for summary judgment filed by the state defendants on March 17, 1999 (Doc. no.129), and the Sinkfield parties on March 17, 1999 (Doc. no. 131), are granted to the extent that the following claims are dismissed: (1) the vote-dilution and one-person-one-vote claims of all the Thompson plaintiffs; and (2) plaintiff Andrew D. Thompson's race-based gerrymandering challenge to Senate District 28. This case will proceed as to all remaining claims and unaddressed defenses.