The United States District Court for the Middle District of Alabama has certified this question:
 "Did the Circuit Court of Montgomery County, Alabama, in Sinkfield v. Bennett, CV-93-689-PR, have subject matter jurisdiction under Alabama law to enter the orders of May 12 and August 13, 1993?"
The question certified arose out of litigation that began in March 1992, when a group of African-American plaintiffs brought an action *Page 884 
in the United States District Court for the Middle District of Alabama challenging, under federal law, the way district lines are currently drawn for the Alabama State Legislature. (Brooks v. Camp, Civil Action No. 92-T-364-N (M.D.Ala.) In February 1993, another group of plaintiffs, identifying themselves as Republicans, brought another action in a federal court, which also claimed that the legislative district lines as then drawn violated federal law. (Peters v. Folsom, Civil Action No. 93-T-124-N (M.D.Ala.). These two cases were consolidated by the United States District Court, which, without reaching the merits of the contentions of the parties, stayed further proceedings in both cases on the ground that the Alabama legislative process had not run its course with regard to redistricting the legislature.
On February 23, 1993, the Supreme Court of the United States announced its decision in Growe v. Emison, ___ U.S. ___,113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), holding that federal courts are required to "defer consideration of disputes involving redistricting where the State, through its legislative or
judicial branch, has begun to address the highly political task itself." ___ U.S. at ___, 113 S.Ct. at 1080. (Emphasis added.)
The Brooks plaintiffs and other African-American citizens then brought a separate action in the Circuit Court of Montgomery County, in which they challenged the existing state legislative district lines under both federal and state law. (Sinkfield v. Bennett, CV-93-689). On May 12, 1993, at the request of all parties litigant in the Sinkfield litigation, the Circuit Court of Montgomery County tentatively approved a consent judgment adopting a plan for redistricting the state legislature for the 1994 legislative elections. The plan was submitted to the United States Justice Department and was precleared by that Department, as required by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. After holding a hearing at which all of the parties to the litigation had an opportunity to be heard in regard to the plan, the Circuit Court of Montgomery County entered a final judgment on August 13, 1993, implementing the plan.
The plaintiffs in Brooks and the defendants in both Brooks
and Peters moved that the federal court dismiss both cases in the federal court and defer to the final judgment rendered in the Circuit Court of Montgomery County. Only the plaintiffs inPeters oppose the dismissal of the cases in the federal court. They contend that the Alabama state courts lack subject matter jurisdiction to redistrict or reapportion the State Legislature.
A three-judge federal panel,[1] noting "the important and determinative issue of Alabama law as to whether the Montgomery County Circuit Court had jurisdiction to enter its order adopting a plan for the reapportionment of the State Legislature," has certified that question to this Court. We have expedited the matter, because trial of these consolidated federal cases has been set for January 4, 1994.
We answer the question in the affirmative.
It is understandable that counsel for Peters would base his argument upon our old cases of Waid v. Pool, 255 Ala. 441,51 So.2d 869 (1951), and Ex parte Rice, 273 Ala. 712,143 So.2d 848 (1962), decided at a time when our Alabama state courts, like other state courts, stayed out of "political" issues such as re-districting of the legislature. Waid v. Pool held that an earlier lawsuit challenging the Alabama legislature's failure to redistrict was properly dismissed:
 "We are of the conclusion that the decree of the court dismissing the bill was free from error and is due to be affirmed. We are satisfied that the appellants are earnest and serious in their contentions and desire for relief, but the difficulty we encounter here is that they are seeking interference by the judicial department of the state in respect to matters committed by the constitution to the legislative department. Constitution of 1901, §§ 43, 44 and 199." *Page 885 
255 Ala. at 442, 51 So.2d at 870. Ex parte Rice summarily affirmed the dismissal of a legislative redistricting lawsuit, citing Waid v. Pool. Peters argues that these two cases demonstrate that circuit courts have no jurisdiction to decide whether the equal protection provisions of the federal and state constitutions are violated by the legislature's action in redistricting itself. We disagree. A careful analysis of those two cases will demonstrate that the courts deferred to the legislature and its primary duty in redistricting itself and declined to exercise jurisdiction in that context. Contrary to the argument advanced by counsel for Peters, these old Alabama cases were not based upon any provision of the state constitution that would limit the power of the courts to entertain the actions. These cases reflect the Court's sensitivity to the fact that the legislature has the primary right and responsibility, pursuant to Art. IX, §§ 198, 199, and 200, to redistrict itself, and the courts' reluctance to interfere in that area.
At the time of Waid v. Pool, indeed until the United States Supreme Court spoke in Baker v. Carr, 369 U.S. 186,82 S.Ct. 691, 7 L.Ed.2d 663 (1962), both state and federal courts considered legislative redistricting as an area peculiarly political and, thus, nonjusticiable in the courts. The United States Supreme Court often sanctioned the action of the lower federal courts in declining to exercise their jurisdiction in cases considered "political."
The pre-Baker v. Carr attitude is reflected in Justice Frankfurter's majority opinion in Colegrove v. Green,328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946), in which the majority refused to reach the merits of a federal court challenge to a congressional apportionment plan in Illinois. Justice Frankfurter urged the court not to enter "this political thicket":
 "[T]his controversy concerns matters that bring courts into immediate and active relations with party contests. From the determination of such issues this Court has traditionally held aloof. It is hostile to a democratic system to involve the judiciary in the politics of the people."
328 U.S. at 553-54, 66 S.Ct. at 1200; see South v. Peters,339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834 (1950).
Then, in 1962, in Baker v. Carr, supra, a case challenging the malapportioned Tennessee legislature, the United States Supreme Court rejected the proposition that such cases were nonjusticiable because they presented "political questions." The Court, reversing the federal district court's dismissal of the complaint, stated:
 "We hold that this challenge to an apportionment presents no nonjusticiable 'political question.' The cited cases do not hold the contrary.
 "Of course the mere fact that the suit seeks protection of a political right does not mean it presents a political question. Such an objection 'is little more than a play upon words.' Nixon v. Herndon, 273 U.S. 536, 540, 47 S.Ct. 446 [446], 71 L.Ed. 759."
369 U.S. at 209, 82 S.Ct. at 706. The holding in Baker v. Carr
was based upon the Fourteenth Amendment guarantee of equal protection:
 "We conclude that the complaint's allegations of a denial of equal protection present a justiciable constitutional cause of action upon which appellants are entitled to a trial and a decision. The right asserted is within the reach of judicial protection under the Fourteenth Amendment."
369 U.S. at 237, 82 S.Ct. at 720.
Within a year of Baker v. Carr, actions challenging state legislative apportionment plans were instituted in over 30 states.[2] One of these was Alabama, where, in Ex parte Rice, supra, this Court declined to consider an equal protection challenge to legislative districting. As noted above, this Court summarily affirmed on the authority of Waid v. Pool, despite the holding in Baker v. Carr.
Two years later the "one person-one vote" decision ofReynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506
(1964), answered a challenge to the malapportionment of the Alabama legislature. In Reynolds v. Sims, the United States Supreme Court elaborated on its holding in Baker v. Carr: *Page 886 
 "We are told that the matter of apportioning representation in a state legislature is a complex and many-faceted one. We are advised that States can rationally consider factors other than population in apportioning legislative representation. We are admonished not to restrict the power of the States to impose differing views as to political philosophy on their citizens. We are cautioned about the dangers of entering into political thickets and mathematical quagmires. Our answer is this: a denial of constitutionally protected rights demands judicial protection; our oath and our office require no less of us. . . . To the extent that a citizen's right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for overweighting or diluting the efficacy of his vote. . . . A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause. This is an essential part of the concept of a government of laws and not men. This is at the heart of Lincoln's vision of 'government of the people, by the people, [and] for the people.' The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races.
 "We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis. . . . "
377 U.S. at 566-68, 84 S.Ct. at 1384-85. The Court further stated:
 "By holding that as a federal constitutional requisite both houses of a state legislature must be apportioned on a population basis, we mean that the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement."
377 U.S. at 577-78, 84 S.Ct. at 1390.
In 1964, the United States Supreme Court, on the equal protection principles articulated in Reynolds v. Sims, invalidated districting plans in Colorado, New York, Maryland, Virginia, and Delaware. Lucas v. Forty-Fourth Gen. Assembly,377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); WMCA, Inc.v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964);Maryland Committee for Fair Representation v. Tawes,377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann,377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v.Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964). It is interesting that the Colorado districting scheme had actually been approved by a statewide referendum. Chief Justice Warren's opinion explained that the fact that a challenged legislative apportionment plan was approved by the electorate was without federal constitutional significance if the scheme adopted failed to satisfy the basic requirements of equal protection as delineated in Reynolds v. Sims. Lucas v.Forty-Fourth Gen. Assembly, supra, 377 U.S. at 734-35,84 S.Ct. at 1473.
In light of Baker v. Carr and its progeny, it is no longer legitimate for a court to decline to enforce the right of every citizen to a vote with a weight equal to the weight of every other citizen's vote. The "one person-one vote" principle ofReynolds v. Sims, supra, was based upon equal protection. The United States Supreme Court expanded that principle in Wesberryv. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), which struck down Georgia's congressional districting statute. The Court held "that, construed in its historical context, the command, of Art. I, § 2 of the United States Constitution that Representatives be chosen 'by the People of the several States' means that as nearly as practicable one man's vote in a congressional election is to be worth as much as another's."376 U.S. at 8-9, 84 S.Ct. at 530 (footnote omitted).
Since Reynolds v. Sims, state courts have shown little reluctance to entertain cases involving "political" issues where there is a *Page 887 
constitutional right at issue. Federal courts have a long history of entertaining such cases.[3] Federal and state courts entertain them because the Constitution of this country, as construed by the United States Supreme Court, requires judicial intervention to ensure that the constitutionally protected right of every citizen is observed.
This Court has said that, when it considers a difficult constitutional question, its task will be "facilitated by reference to the substantial body of case law that has evolved from constitutional challenges brought in the highest courts of other states [on related issues]." Moore v. Mobile InfirmaryAss'n, 592 So.2d 156, 158 (Ala. 1991). Two state supreme courts (those of Texas and Tennessee) have entertained cases involving the "political" issue of redistricting. The Supreme Court of Texas explained that its responsibility to protect constitutional rights compelled the court to consider a party's constitutional challenge to redistricting:
 "The responsibility for apportioning the State into legislative districts belongs primarily to the Legislature. TEX. CONST. art. III, § 28. The judiciary, however, is both empowered and, when properly called upon, obliged to declare whether an apportionment statute enacted by the Legislature is valid. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Clements v. Valles, 620 S.W.2d 112 (Tex. 1981); Smith v. Craddick 471 S.W.2d 375 (Tex. 1971); Smith v. Patterson, 111 Tex. 535, 242 S.W. 749
(1922). A judicial determination that an apportionment statute violates a constitutional provision is no more an encroachment on the prerogative of the Legislature than the same determination with respect to some other statute. The Legislature, as well as the judiciary, must comply with the United States Constitution and the Texas Constitution. Yet a court's duty to consider a party's constitutional challenge to a statute, never to be taken lightly, and the deference owed a coordinate branch of government, are rarely more sensitive of serious matters than when the statute attacked involves the highly politically charged subject of apportionment."
Terrazas v. Ramirez, 829 S.W.2d 712, 717 (Tex. 1991). While the power to redistrict in Texas has generally been exercised by the state's highest court, the Texas Supreme Court stated, "[W]e see no constitutional reason why it does not also reside in a trial court of general jurisdiction." 829 S.W.2d at 718. In Terrazas v. Ramirez the Texas Supreme Court spoke to the power of the lower state courts in redistricting cases:
 "Although state courts in Texas have invalidated apportionment statutes, none has ever imposed a substitute plan upon the State. Nevertheless, we do not doubt the power of our courts to do so. United States District Courts have this power, Reynolds, 377 U.S. at 586-87 [84 S.Ct. at 1394], and have exercised it in Texas. [Citations omitted.] State courts in other jurisdictions have also ordered apportionment plans after invalidating legislative plans. E.g. Legislature of California v. Reinecke, 9 Cal.3d 166, 107 Cal.Rptr. 18, 507 P.2d 626 (Cal. 1973), pursuant to jurisdiction retained in 7 Cal.3d 92, 101 Cal.Rptr. 552, 496 P.2d 464 (Cal.), modifying 6 Cal.3d 595, 99 Cal.Rptr. 481, 492 P.2d 385 (Cal. 1972) (Citations omitted.) Reason and experience argue that courts empowered to invalidate an apportionment statute which transgresses constitutional mandates cannot be left without the means to order appropriate relief."
829 S.W.2d at 717-18.
During the 1970's, the federal courts handled legislative redistricting in Tennessee, but in the 1980's the state courts took it over. In Lockert v. Crowell, 631 S.W.2d 702 (Tenn. 1982), the Tennessee Supreme Court spoke to the justiciability of the issue of redistricting:
 "A threshold issue decided by the Chancellor and appealed by the defendants is *Page 888 
that the complaint presented a justiciable issue. The defendants charge that reapportionment is non-justiciable because it is a political question and because it is a legislative function under the Separation of Powers Doctrine. They further argue that, should the courts declare the [redistricting] Act unconstitutional and the General Assembly fail to pass a constitutional act, the courts would be without power to grant the ultimate remedy of formulating their own reapportionment plan.
 "In view of the evolution in this area of constitutional law which has taken place since the United States Supreme Court's decision in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), we disagree, and affirm the Chancellor's holding that this is a justiciable issue. See Egan v. Hammond, 502 P.2d 856, 865
(Alaska 1972); Legislature of the State of California v. Reinecke, 10 Cal.3d 396, 110 Cal.Rptr. 718, 516 P.2d 6 (1973); White v. Anderson, 155 Colo. 291, 394 P.2d 333 (Colo. 1964); Guntert v. Richardson, 47 Haw. 662, 394 P.2d 444, 449
(1964); Butcher v. Bloom, 415 Pa. 438, 203 A.2d 556, 559-560 (1964); Smith v. Craddick, 471 S.W.2d 375 (Tex. 1971); In re Senate Bill 177, 130 Vt. 358, 294 A.2d 653 (Vt. 1972); State v. Zimmerman, 22 Wis.2d 544, 126 N.W.2d 551, 560-563 (1964); 25 Am.Jur.2d Elections § 32 (1966); 16 C.J.S. Constitutional Law § 147 (1956). These and other cases relied upon in this opinion are replete with statements that apportionment is primarily a legislative function, and that the courts should act only if the legislature fails to act constitutionally after having had a reasonable opportunity to do so. If the court were forced in such an event to devise its own constitutional plan, it would not in effect be preempting the General Assembly.
631 S.W.2d at 705-06.
To suggest that anything in the Alabama Constitution denies a circuit court in Alabama jurisdiction to entertain an action like the Sinkfield case is to misread that constitution. The question is not whether circuit courts in Alabama have jurisdiction — the question is whether the redistricting issue is a justiciable one. Alabama's circuit courts possess general subject-matter jurisdiction to decide all justiciable issues of federal and state constitutional and statutory law. These courts of general jurisdiction have the inherent power and responsibility to enforce constitutional rights under both the federal and the state Constitution. Art. VI, Ala. Const. 1901 (Amend. 328).
Alabama has recently shown a willingness to enforce both state and federal constitutional rights in areas where both state and federal courts had abstained for many years.[4] In Alabama and elsewhere, state courts are now equally willing with the federal courts to enter these sensitive areas when compelled to do so by the constitutions of the United States or of the state, and it is no longer open to debate as to whetherReynolds v. Sims and Sims v. Amos, 336 F. Supp. 924 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), compel the Alabama legislature to redistrict itself at least after every decennial census.
The law is now clear that "legislative reapportionment cases are justiciable, and judicial relief becomes appropriate when the legislature fails to reapportion according to constitutional requisites in a timely fashion after having adequate opportunity to do so, or where there is no effective political remedy to obtain relief." 16 C.J.S.Constitutional Law § 178 (1984) (footnotes omitted).
 "However, it is generally recognized that a court of competent jurisdiction possesses the power to reapportion when state reapportionment statutes fall short of constitutional requirements, or where there is either persistent failure, refusal, or undue delay by the legislature or the body empowered to act to come forth with a valid plan of reapportionment after having had an adequate opportunity to do so." *Page 889 
81A C.J.S. States § 77 (1977) (footnotes omitted). Any lingering doubt as to the power of state courts to decide apportionment questions has been laid to rest by the United States Supreme Court in Growe v. Emison, supra.
We have abundant examples of the willingness of Alabama state courts to adjudicate state and federal constitutional claims. See: Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993);Hunt v. Hubbert, 588 So.2d 848 (Ala. 1991); Terrell v. City ofBessemer, 406 So.2d 337, 340 (Ala. 1981); Dothard v. AlabamaState Dep't of Human Resources, 613 So.2d 353 (Ala. 1993); Scottv. City of Mountain Brook, 603 So.2d 1030 (Ala. 1992); Hollandv. Hunt, 600 So.2d 233 (Ala. 1992); Nelson v. Universityof Alabama System, 594 So.2d 632 (Ala. 1992); Roberts v. Joiner,590 So.2d 195 (Ala. 1991); Point Properties, Inc. v. Anderson,584 So.2d 1332 (Ala. 1991); George v. McIntosh-Wilson,582 So.2d 1058 (Ala. 1991).
The circuit courts of Alabama, as courts of general jurisdiction, have the same power and duty to provide relief for violations of federal law as do the federal courts. Indeed, when the rights provided by a state constitution mirror rights of the United States Constitution, the state court system may be a more appropriate forum for protecting those rights, because, in many instances, the individual rights provisions under the state constitution are as broad as, if not broader than, those in the federal Bill of Rights.
 "While the Federal Constitution, as interpreted by the United States Supreme Court, establishes minimum standards, the states have the power and are free to provide greater safeguards and to extend this protection through their own organic law — the State Constitutions. Indeed, the 9th and 10th Amendments to the United States Constitution envisage this fundamental truth."
Gilbreath v. Wallace, 292 Ala. 267, 271, 292 So.2d 651, 654-55
(1974) (footnote omitted). As we recognized in Moore v. MobileInfirmary, "State courts, in determining the scope of rights guaranteed by their own constitutions, . . . may, in fact, provide more protection for private rights than the United States Constitution requires." 592 So.2d at 170. See also Exparte Boykin, [Ms. 1921336, Oct. 8, 1993], 1993 WL 394750 (Ala. 1993) ("the United States Supreme Court has recognized that a state may confer procedural protections of liberty interests that extend beyond those minimally required by the Constitution of the United States"); Ex parte Love, 513 So.2d 24, 30
(Ala. 1987); Mills v. Rogers, 457 U.S. 291, 300, 102 S.Ct. 2442,2449, 73 L.Ed.2d 16 (1982).
The plaintiffs in these consolidated federal cases sought redress first in the federal court. Before the federal court reached the merits of their claims, indeed while all further proceedings had been stayed by order of the federal court, the United States Supreme Court issued its opinion in Growe v.Emison, supra, which required that federal courts abstain from entering this area until the state legislature and state judiciary had demonstrated an inability or disinclination to act in the peculiarly sensitive area of re-districting the state legislature.
In answering this certified question in the affirmative, we defer to the wisdom of the United States Supreme Court inGrowe v. Emison.
 "Today we renew our adherence to the principles expressed in Germano [Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965) (per curiam)], which derive from the recognition that the Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts. See U.S. Const., Art. I, § 2. 'We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court.' Chapman v. Meier, 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766
(1975). Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it."
___ U.S. at ___, 113 S.Ct. at 1081. (Emphasis added.)
Redistricting is both a sensitive and a political issue. There is no dispute that the *Page 890 
legislature has the initial responsibility to act in redistricting matters. Ala. Const., Art. IX, §§ 198, 199, 200. However, in the event the legislature fails to act, the responsibility shifts to the state judiciary.[5] In his often quoted dissent in Morgan County Commission v. Powell, 292 Ala. 300, 293 So.2d 830 (1974), Chief Justice Heflin recognized that when the other branches of government are remiss in their constitutional duties the judiciary must act. 292 Ala. at 319,293 So.2d at 847. While in Powell he focused on the inherent power of the judiciary to provide for an orderly and efficient court system when a legislative body fails or refuses to act, the situation he was there writing to is analogous in many ways to the situation before us in which the legislature likewise has failed or refused to act.
The United States Supreme Court in Growe wisely recognized that action by the state judiciary is preferable to federal intervention in this sensitive state matter. It is gratifying to know that the United States Supreme Court appreciates that the public will more readily accept state court intervention, brought in the context of litigation, than it will accept federal intervention in matters of state government. It is equally gratifying to have this outstanding three-judge panel of United States district judges recognize that it is appropriate that judges elected by the people of Alabama be given the opportunity to resolve this question. In answering this question in the affirmative, we accept the duty of the state judiciary to share responsibility with the federal judiciary for the resolution of often unpopular, but critical, constitutional issues.
CERTIFIED QUESTION ANSWERED.
HORNSBY, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, INGRAM and COOK, JJ., concur.
[1] The Honorable Myron Thompson, the Honorable W. Harold Albritton, and the Honorable Joel Dubina.
[2] Gerald Gunther, Constitutional Law at 1621 (11th ed. 1985).
[3] "One striking aspects of the Warren Court's activism was its dramatic expansion of federal judicial intervention into state affairs in the name of individual rights." Developments in the Law, The Interpretation of State Constitutional Rights, 95Harv.L.Rev. 1324, 1349 n. 82 (1982) (citing Reynolds v. Sims
and other case examples).
[4] The author of a series of law review articles on state constitutional law notes: "In recent years, there have been striking developments in state constitutional law. Indeed, since the early 1970s we have been experiencing a 'constitutional revolution' in the judicial interpretation of individual-rights provisions of state constitutions." Robert F. Williams, State Constitutional Law: Teaching and Scholarship, 41 J.Legal Educ. 243, 244 (June 1991). (Footnote omitted.)
[5] Assuming, of course, that a citizen of this state properly invokes the state court's jurisdiction in an adversary proceeding.