This case involves a state-law challenge to the new redistricting plan for Alabama senate districts. That plan, proposed by Act No. 2001-727, 2001 Ala. Acts (hereinafter "the redistricting plan"), was approved by Governor Don Siegelman on July 3, 2001, and was precleared by the Attorney General of the United States on October 15, 2001. John W. Rice, William McCall Harris, and Patricia Christine N. Wood (hereinafter collectively referred to as "the Rice plaintiffs") challenged the redistricting plan, naming as defendants state election officials and contending that the plan failed to satisfy the one-person, one-vote standard they viewed as mandated by Art. IX, § 200, Ala. Const. 1901. The Montgomery Circuit Court entered a summary judgment in favor of the state election officials. This appeal followed.
I. Constitutional Background
Art. IX, § 200, Ala. Const. 1901, describes the duty of the Legislature in the creation of senate districts. It provides:
 "It shall be the duty of the legislature at its first session after taking of the decennial census of the United States in the year nineteen hundred and ten, and after each subsequent decennial census, to fix by law the number of senators, and to divide the state into as many senatorial districts as there are senators, which districts shall be as nearly equal to each other in the number of inhabitants as may be, and each shall be entitled to one senator, and no more; and such districts, when formed, shall not be changed until the next apportioning session of the legislature, after the next decennial census of the United States shall have been taken; provided, that counties created after the next preceding apportioning session of the legislature may be attached to senatorial districts. No county shall be divided between two districts, and no district shall be made up of two or more counties not contiguous to each other."
(Emphasis added.)
Section 200 prohibits a districting plan that divides a county between two districts. In other words, county lines must be preserved in any redistricting plan. To accommodate the obvious fact that only a remarkably fortuitous circumstance would permit absolute equality in population between districts while observing the integrity of county lines § 200 speaks in practical terms of the goal that the population of the districts be equal. It requires the districts to be "as nearly equal to each other in the number of inhabitants as may be."
In earlier litigation challenging the constitutionality of Alabama legislative districts on the basis of population disparity under the "one-man, one-vote" requirement as expressed in Reynolds v. Sims,377 U.S. 533 (1964), the Supreme Court discussed the necessity of harmonizing the requirement of § 200 for integrity of county lines with the requirement for substantial equality of population in legislative districts. Of course, pursuant to the Supremacy Clause in Art. VI of the United States Constitution, any provisions of § 200 that conflict with the Fourteenth Amendment to the United States Constitution would not be enforceable. Such a result was reached in Sims v. Amos, 336 F. Supp. 924 (M.D.Ala.), aff'd, 409 U.S. 942 (1972), in which the three-judge panel held: *Page 160 
 "In approving the crossing of county lines, we necessarily fail to give effect to that part of Art. IX, § 200, Alabama Constitution of 1901, which forbids splitting any county between two or more legislative districts. We find that the requirements of equal protection necessitate, in some instances, that county lines give way in drawing legislative districts. To the extent that Section 200 forbids such, it must yield for `when there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls.'"
336 F. Supp. at 939 n. 20 (quoting Reynolds v. Sims,377 U.S. at 584).
II. Procedural History
On August 9, 2001, the Rice plaintiffs filed their complaint in the Montgomery Circuit Court, seeking declaratory and injunctive relief. The Rice plaintiffs named Bill English, probate judge of Lee County, and 13 other probate judges, as well as Secretary of State James Bennett, each in his or her official capacity, as defendants (hereinafter collectively referred to as "the election officials"). The Rice plaintiffs contended that the new senate districts failed to satisfy Art. I, § 33, (1)
and Art. IX, § 200, Ala. Const. 1901, in that the population of the new districts was not "as nearly equal to each other . . . as may be." Art. IX, § 200. The Rice plaintiffs sought a judgment declaring that the new plan violates state law and injunctive relief that would, among other things, prohibit the use of the new districts in any election.
The election officials answered the complaint and moved to stay further proceedings pending preclearance of the plan by federal officials. When the State received a letter from the United States Department of Justice stating that the Attorney General of the United States interposed no objection to the plan, the State advised the trial court that the plan had been precleared by filing a copy of the letter with the court.
While preclearance of the redistricting plan was pending, Governor Siegelman moved to intervene as a defendant; the trial court granted his motion. After the State obtained preclearance, Senators Lowell Barron and Henry Sanders also moved to intervene as defendants. The trial court granted that motion on January 10, 2002.
On November 19, 2001, the trial court entered a scheduling order, pursuant to which the parties were to file any dispositive motions by December 19, 2001, and were to argue those motions at a hearing to be held on January 10, 2002. On December 19, 2001, Secretary of State Bennett, for himself and the other election officials, filed a motion for a summary judgment, together with a supporting brief and a narrative summary of the undisputed material facts. Governor Siegelman joined in the election officials' motion. Even though their motion to intervene had not been ruled on, Senators Barron and Sanders, on December 19, 2001, also moved for a summary judgment in their favor. On January 10, 2002, the trial court heard oral argument on the election officials' summary-judgment motion. At the time of the hearing, the Rice plaintiffs had not filed any written response to any of the summary-judgment motions. They did not file any response until January 17, 2002, when they filed what they entitled "Rice Plaintiffs' Response and Objection to *Page 161 
Motions for Summary Judgment by Other Parties; or, Alternatively, Response and Opposition to Motion by Intervenors Barron and Sanders for Summary Judgment."
On January 28, 2002, the trial court entered two orders. In the first order, it held that the state-law claims before it were justiciable. In the second, it (1) granted the election officials' motion for a summary judgment, in which it noted that Senators Barron and Sanders had orally joined in the motion to the extent that it addressed the merits of the Rice plaintiffs' claims (as opposed to the justiciability of those claims); (2) stated that the summary-judgment motion filed by Senators Barron and Sanders was not before the court on January 9, 2002, and would not be considered; and (3) held that the Rice plaintiffs' response was not timely filed and would not be considered. On February 11, 2002, the Rice plaintiffs filed a notice of appeal.
The trial court's findings in its summary-judgment order can be summarized as follows:
(1) In adopting Art. IX, § 200, the drafters of the Alabama Constitution of 1901 did not require senate districts to be absolutely equal in population and, in fact, endorsed overall population deviations in excess of 202% for senate districts;
(2) Apportionment is primarily a legislative function; courts should act only if the Legislature fails to act constitutionally after having had a reasonable opportunity to do so. Brooks v. Hobbie, 631 So.2d 883,890 (Ala. 1993);
(3) The Legislature has itself adopted a 10% variance rule in its guidelines for reapportionment;
(4) Other states also apply a 10% variance rule;
(5) A federal district court in Alabama has already ruled that § 200 does not require greater equality in population in legislative districts than does federal law, and federal law generally permits deviations not exceeding 10%. Sims v. Amos, supra; and
(6) The plain meaning of § 200 itself does not require absolute population equality; instead, it requires the districts to be "as nearly equal as . . . may be."
III. Jurisdiction
The election officials argue that the separation-of-powers doctrine enshrined in § 43, Ala. Const. 1901, requires that this Court decline jurisdiction over this case. The election officials remind us that in earlier cases this Court has refused to recognize the justiciability of redistricting claims, citing Waid v. Pool, 255 Ala. 441, 51 So.2d 869
(1951), and Ex parte Rice, 273 Ala. 712, 143 So.2d 848 (1962). The election officials attempt to distinguish Brooks v. Hobbie, supra, in which, they argue, this Court recognized the justiciability of redistricting claims only in those cases where the Legislature has wholly failed to act. The election officials support their contention with a quote from an opinion of the Supreme Court of Tennessee, quoted in Brooks v. Hobbie, observing that "`courts should act only if the legislature fails to act constitutionally after having had a reasonable opportunity to do so.'" 631 So.2d at 888 (quoting Lockert v. Crowell, 631 S.W.2d 702,706 (Tenn. 1982)). However, the quoted text from Lockert refers to the failure to act "constitutionally" — not a failure to act at all. Id. We decline to read this Court's statement in Brooks v. Hobbie that "in the event the legislature fails to act, the responsibility shifts to the state judiciary" as limiting this Court's jurisdiction to only those instances in which the Legislature has failed to act at all. Brooks, 631 So.2d at 890. *Page 162 
In Brooks v. Hobbie, this Court distinguished Waid and Rice, noting that the Court's disinclination to act in the earlier cases was based upon a judicially imposed prudential limitation on the Court's authority in sensitive areas involving redistricting, rather than upon any provision of the State constitution limiting the power of courts to entertain the action. Brooks, 631 So.2d at 885. The election officials dismiss this basis for distinction as unconvincing; they suggest that "there is considerable tension between Brooks and Waid v. Pool." We decline this veiled invitation to overrule Brooks v. Hobbie, mindful of the necessity for great deference to be given to legislative enactments when those enactments are challenged on constitutional grounds, as we discuss more fully below. (2)
Justice Houston's special concurrence states that Brooks v. Hobbie confused this Court's responsibility under federal law with "our responsibility under State law, where our jurisdiction is restricted by the separation-of-powers provision in the Alabama Constitution." 835 So.2d at 168 n. 4. It then concludes that "it is for the Legislature, not the judiciary, to determine whether these senatorial districts are as `nearly equal to each other in the number of inhabitants as may be,'" citing Art. III, § 43, Ala. Const. 1901 (the separation-of-powers clause). Id. Such abdication of judicial responsibility is inconsistent with the settled principle that the people have forbidden the Legislature from conducting itself in a manner inconsistent with their constitution and when it does, it is incumbent upon the judiciary to nullify a legislative enactment contrary to the constitution. See Ex parte Selma Gulf R.R., 45 Ala. 696 (1871).
However, in Ex parte Selma Gulf R.R., this Court, while recognizing the Court's power to exercise judicial review of acts of the Legislature, was also mindful of the need for restraint. This Court there stated:
 "No power of this grave nature [i.e., judicial review of legislative acts] is expressly given. Considering its importance, it is a little strange that it has been wholly omitted. But, grant that it exists. It can not be permitted to rest upon mere inference and argument; because, if the inference is a mistake, or the argument is false, its exercise is an usurpation by one branch of the government against the authority of another. Did the people mean to grant such a power, unless some express clause of the constitution was clearly disregarded? I think not."
45 Ala. at 728 (emphasis added).
This discussion of the doctrine of judicial review is remarkably parallel to the observations of Judge Learned Hand, speaking of the United States Constitution, almost 80 years later. Judge Hand stated:
 "There was nothing in the United States Constitution that gave courts any authority to review the decisions of Congress; and it was a plausible — indeed to my mind an unanswerable — argument that it invaded the `Separation of Powers' which, as so many then believed, was the condition of all free government."
Learned Hand, The Bill of Rights: The Oliver Wendell Holmes Lectures, 1958, 10-11 (Harvard University Press 1958). However, Judge Hand justified the propriety of judicial review as follows: *Page 163 
 "For centuries it has been an accepted canon in interpretation of documents to interpolate into the text such provisions, though not expressed, as are essential to prevent the defeat of the venture at hand; and this applies with especial force to the interpretation of constitutions, which, since they are designed to cover a great multitude of necessarily unforeseen occasions, must be cast in general language, unless they are constantly amended. If so, it was altogether in keeping with established practice for the Supreme Court to assume an authority to keep the states, Congress, and the President within their prescribed powers. Otherwise the government could not proceed as planned; and indeed would almost certainly have foundered, as in fact it almost did over that very issue.
 "However, since this power is not a logical deduction from the structure of the Constitution but only a practical condition upon its successful operation, it need not be exercised whenever a court sees, or thinks that is sees, an invasion of the Constitution."
Id. at 14-15 (emphasis added). Judge Hand later described the power of judicial review as "no doubt a dangerous liberty, not lightly to be resorted to. . . ." Id. at 29.
When Ex parte Selma Gulf R.R. was written, a separation-of-powers clause appeared in Article III of the Constitution of 1868. The same text had appeared in every version of the Constitution since statehood in 1819. Article III of the Constitution of 1868 was copied word-for-word into Article III of the Constitution of 1875. The text was slightly modified in Article III, § 43, of the Constitution of 1901. However, William C. Oates, a delegate to the Constitutional Convention of 1901, comparing the differences between the Constitution of 1875 and the Constitution of 1901, stated, "The distribution of powers of government is substantially the same as in the old or present [1875] Constitution." 4 Official Proceedings of the Constitutional Convention of 1901, p. 4948. We conclude that the authority of this Court to review challenges to acts of the Legislature on constitutional grounds is a bedrock principle of our State's legal heritage.
IV. Standard of Review
In Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala. 2000), this Court restated the long-standing rules governing review of acts of the Legislature under constitutional attack:
 "`In reviewing [a question regarding] the constitutionality of a statute, we "approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government."' Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala. 1991) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). Moreover, `[w]here the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction [that] would uphold it.' McAdory, 246 Ala. at 10, 18 So.2d at 815. In McAdory, this Court further stated:
 "`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear *Page 164 
 beyond reasonable doubt that it is violative of the fundamental law.'
 "246 Ala. at 9, 18 So.2d at 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits. Id."
V. Analysis
By the redistricting plan, the Legislature established 35 senate districts for the State. The Senate, according to the redistricting plan, is to be composed of 35 members, each representing a district whose total population is within plus or minus five percent of the ideal population of a senate district. In creating those districts, the Legislature split 30 of the State's 67 counties. While the Rice plaintiffs rely on § 200, they concede, as they must, that, notwithstanding the clear prohibition of § 200, disregard of county lines is necessary to accommodate enforcement of the United States Constitution.
The Rice plaintiffs base a significant portion of their appellate argument on the contention that splitting counties must be held to the absolute minimum and that the Legislature's attempt in the redistricting plan to satisfy the requirements of population equality at the expense of preserving county lines exceeds the absolute minimum. The trial court's order conspicuously fails to address this contention; however, that omission is not an oversight.
The Rice plaintiffs contended in the trial court that the redistricting act violated § 200 in that the act disregarded the requirement of the Alabama Constitution that senate districts must have equal populations. The Rice plaintiffs' complaint stated:
 "32. [I]n order to achieve required population equality among Alabama's thirty-five (35) state senate districts, as proscribed by Ala. Const. art. IX, § 200, the population of each state Senate district should be 127,060 persons with each senate district `as nearly equal to each other in the number of inhabitants as may be.' See Ala. Const. art. IX, § 200.
 "33. Pursuant to Act No. 2001-727, Alabama's most populous state senate district, Senate District 8, has 133,302 persons. Accordingly, Senate District 8 exceeds the constitutionally required population by 6,242 persons, or 4.91%. Alabama's least populous state senate district, Senate District 6, has 120,942 persons. Accordingly, Senate District 6 falls short of the constitutionally required population by 6,118 persons, or 4.82%. The difference between the populations of the most populous and the least populous state senate districts in Act No. 2001-727 is 12,360 persons, which constitutes a `relative overall range' of 9.73%."
(Footnotes omitted.) Nowhere in the complaint do the Rice plaintiffs challenge the degree to which county lines were disregarded. Likewise, in the summary-judgment hearing held by the trial court on January 10, 2002, the Rice plaintiffs argued:
 "MR. MONTIEL [counsel for the Rice plaintiffs]: The first argument that the State makes, which is joined apparently by intervenors Barron and Sanders, is that Section 200 does not mean what we contend it is; that is, that the districts be as nearly as equal in the inhabitants as may be.
". . . .
 "Article 1, Section 2 [of the United States Constitution] deals with congressional districts. Federal courts are crystal clear, and the caselaw is undisputed in this country. The congressional districts, because of that language in *Page 165 
 the Federal Constitution, have to be drawn as nearly as equal, and I will submit to Your Honor that most states draw on to zero deviation; i.e., equal population.
"THE COURT: But not all of them?
 "MR. MONTIEL: Occasionally a very, very small, de minimis, and the courts have said that these ranges, this, plus or minus 5 percent wouldn't be de minimis. There's no case — it's going to be like .017 percent, very small. It's where they may not be splitting a precinct and leave a few hundred people in the district. Might be constitutional or permissible under Article 1, Section 2 for the Constitution in congressional districts.
 "THE COURT: The drafters of this 1901 provision, if they wanted equal, all they had to say was equal — draw them equal. Why would they modify that by saying nearly equal?
 "MR. MONTIEL: Well, I think at that time — and I think that's why the court has to look at the development of technology. They wrote, `shall be' — it's mandatory — `shall be as nearly equal to each other in number of inhabitants as may be.' And we believe that requires the court to analyze whether or not the State of Alabama —
 "THE COURT: If I were drafting this statute and I wanted — and my intention was for the districts to be equal, I would have written, `they shall be equal.'
 "MR. MONTIEL: And we submit that's what it says. . . . It says `shall be as nearly as equal.' And as nearly as equal in inhabitants as may be in 2001 is zero deviation. And for purposes of the record, every district should have an equal number of inhabitants.
". . . .
 "THE COURT: Doesn't [the phrase `as may be'] allow for some movement there, some — I mean, doesn't it conjure up the notion that somebody realized that these things couldn't be mathematically certain?
 "MR. MONTIEL: Judge, . . . the answer to that is, if you are not splitting counties —
"THE COURT: Uh-huh.
 "MR. MONTIEL: And that's another part of Section 200 you're going to read. . . . You cannot use splitting counties as an excuse to violate equal population requirements under federal law. That's what the federal courts have determined in Reynolds v. Sims [377 U.S. 533 (1964)]. And what the federal court did in Reynolds v. Sims is [it] determined that certain provisions of Section 200 are unconstitutional, but — and there's caselaw, plenty of caselaw at this point, Judge. . . . [The federal court] specifies that all provisions of Section 200 . . . that don't violate federal law, should continue in existence, and certainly as-nearly-as-equal-in-inhabitants language doesn't violate federal law. I mean, that's saying if it's zero deviation, that violates no one."
The only reference to splitting counties in the argument before the trial court during the hearing on the summary-judgment motion occurs in the context of recognizing the ineffectiveness of that portion of § 200 condemning the splitting of counties when it stands in the way of the requirement of population equality in the legislative districts.
The Rice plaintiffs did not submit any written opposition to the summary-judgment motion, either before or at the hearing. At the conclusion of the hearing, the trial court gave the Rice plaintiffs permission to file additional *Page 166 
materials in response to the motion for a summary judgment filed by intervenors Senators Sanders and Barron, which was not before the court at the time of the hearing on the election officials' summary-judgment motion. One week after the hearing, the Rice plaintiffs submitted materials, including affidavits, which they styled as a response to the motion for summary judgment filed by the election officials or, alternatively, a response to the motion for summary judgment filed by intervenors Senators Sanders and Barron. In its order entered 11 days later, the trial court stated that it did not "reach the Motion for Summary Judgment filed by Defendant Intervenors Barron and Sanders." With respect to the Rice plaintiffs' response filed after the hearing, the trial court stated that it did not consider that response because it was untimely. Absent an abuse of discretion, a trial court does not err in striking as untimely affidavits in opposition to a motion for summary judgment. Murray v. Timberlake, 564 So.2d 885, 889 (Ala. 1990); Nolen v. Peterson, 544 So.2d 863 (Ala. 1989); Johnson v. Allstate Ins. Co.,505 So.2d 362 (Ala. 1987). To the extent that this contention is raised in the response filed after the hearing on the election officials' motion for summary judgment, we hold that the trial court did not abuse its discretion in rejecting it as untimely. Indeed, the Rice plaintiffs do not contend otherwise, stating in their reply brief, "County splitting was not considered at all by the trial court, as admitted by each of the Appellees in their respective briefs." Reply Brief at pp. 2-3.
The Rice plaintiffs, therefore, contend for the first time on appeal that the redistricting act unnecessarily and excessively splits county lines in creating the State senate districts. Recently, in Porter v. Colonial Life Accident Insurance Co., 828 So.2d 907, 908 (Ala. 2002), we restated the long-standing general rule that "[t]he appellate courts will not consider a challenge to an order or a judgment of a trial court asserted for the first time on appeal." This Court has often applied that general rule in the specific context of attempts to overturn a trial court's summary judgment. See Ex parte Ryals, 773 So.2d 1011
(Ala. 2000), where this Court stated, "[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment." 773 So.2d at 1013 (citing Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala. 1992)) (second emphasis added). See also Ex parte Elba Gen. Hosp. Nursing Home, Inc.,828 So.2d 308, 312 (Ala. 2001), where this Court, after stating the general rule, observed:
 "Put another way, on an appeal from a summary judgment, this Court cannot hold the trial court in error on the basis of arguments made for the first time on appeal. See Barnett v. Funding Plus of America, Inc., 740 So.2d 1069 (Ala. 1999); West Town Plaza Assocs., Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala. 1993)."
The Rice plaintiffs seek to avoid this result by contending that § 200 requires, in addition to an evaluation of the population-equality requirement, an analysis of split counties. The Rice plaintiffs, however, cite no authority for setting aside the general rule requiring presentation of issues in the trial court as a predicate for appellate review in civil cases. The "plain-error" rule, which dispenses with the necessity for error preservation, is confined to death-penalty cases. The Rice plaintiffs' efforts to urge for the first time on appeal excessive disregard of county lines *Page 167 
in creating the senate districts as a basis upon which to reverse the trial court is therefore not before us.
The Rice plaintiffs also contend that the trial court erroneously applied the standard for equal protection under the Fourteenth Amendment to the United States Constitution, rather than the standard under § 200. We disagree. The trial court's references to standards derived in adherence to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution are presented as illustrations or analogies and are not given the force of precedent. The trial court recognized the adoption of guidelines by the Legislature (3) that embrace an overall percentage deviation of 10 percent, with which the redistricting plan complies. The trial court also took account of relevant historical context when it cited facts indicating that the framers of the Alabama Constitution of 1901 had a remarkably high tolerance for deviations in population between senate districts. While it is true that the legislative districts created at the time of ratification of the Constitution of 1901 were not governed by § 200, which did not come into operation until the next decennial census, we construe constitutional and statutory provisions in light of the circumstances and conditions prevalent at the time of enactment.
 "It is a familiar canon of statutory construction that `where there is doubt as to the meaning and intent of a statute by reason of the language employed, or arising from the context, courts may look to the history, conditions which lead to that enactment, the material surrounding circumstances, the ends to be accomplished, and evils to be avoided or corrected, in order that the legislative intent be ascertained and given effect, if possible.'"
Eagerton v. Graves, 252 Ala. 326, 331-32, 40 So.2d 417, 422 (1949) (quoting Henry v. McCormack Bros. Motor Car Co., 232 Ala. 196, 198,167 So. 256, 257 (1936)). See also State Farm Fire Cas. Co. v. Lambert, 291 Ala. 645, 648, 285 So.2d 917, 918 (1973) ("This question [of statutory construction] cannot be answered apart from the historical context within which the statute was passed."). The trial court did not inappropriately adhere to principles applicable only to proceedings governed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to the exclusion of principles of Alabama law applicable to the construction of § 200.
The Rice plaintiffs also contend that the trial court failed to consider "the obviously racially discriminatory pattern of population assignments" in the redistricting plan. Yet the Rice plaintiffs stated in the trial court, "[W]e don't make any allegations of race in this case."
VI. Conclusion
The trial court afforded the Legislature appropriate deference in its solution to the difficult question of dividing the State into 35 senate districts with approximately equal population. The districts created by the Legislature are within plus or minus five percent of the ideal population of a senate district. While various members of this Court, had we been privileged to participate in the legislative deliberations and then to cast votes according to our respective consciences, might have opted for different district boundaries, less disregard of county lines, or greater concern for more uniformity of *Page 168 
population within districts, we recognize that the people elected us to cast our votes as judges and not as legislators. As judges, we cannot overturn the redistricting plan on the grounds asserted by the Rice plaintiffs in the appeal before us. The Rice plaintiffs have failed to overcome the presumption of constitutionality that precedent requires us to attach to the redistricting plan. In so holding, we adhere to the admonition of this Court in Ex parte Selma Gulf R.R. that we should refrain from exercising the power of judicial review, described as one of "grave nature," "unless some express clause of the constitution was clearly disregarded." 45 Ala. at 728 (emphasis added). We therefore decline to invoke what Judge Hand described as "no doubt a dangerous liberty, not lightly to be resorted to" (L. Hand, id. at 29) so as to require further proceedings on whether a deviation in population of plus or minus five percent violates the constitutional mandate of § 200 that "districts shall be as nearly equal to each other in the number of inhabitants as may be."
The trial court properly entered a summary judgment in favor of the election officials, as joined in by the intervenors; we affirm that judgment.
AFFIRMED.
Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Houston, J., concurs specially.
Moore, C.J., and See, J., dissent.