MOORE, Chief Justice
(dissenting).
Every judicial officer in this State takes an oath to uphold the Constitution of the United States and the Constitution of the State of Alabama. Art. XVI, § 279, Ala. Const.1901. I consider this case to be one of the most important to be before this Court in recent history. For the reasons stated herein, I respectfully dissent from the majority’s no-opinion affirmance of the trial court’s dismissal of this case. From my own inquiry I have found very few citizens who fully understand the changes made by the recent amendments to the Alabama Constitution under the act challenged in this case or who comprehend the potential danger of future changes to the constitution under this act. This Court spends the majority of its time deliberating on the meaning of the words in statutes, yet here we decline to review the action of the legislature — one branch of our government — in initiating a revision of the entire Alabama Constitution.

I. Background

A. Facts

In 2011, the legislature passed and the governor signed Senate Joint Resolution 82, which created a 12-member Constitutional Revision Commission (“the commission”). Act No. 2011-197, Ala. Acts 2011 (“the Act”). The Act gave each of three specified members — the governor, the speaker of the House of Representatives, and the president pro tempore of the Senate — the authority to appoint three additional members. The intellectual engine of the Commission is the Alabama Law Institute: [2]
“(c) The Alabama Law Institute shall serve as staff for the Commission. The institute will analyze the current Constitution of Alabama of 1901, as amended, with a view toward identifying those provisions which are antiquated, unnecessary, or duplicative of other provisions. The goal of the institute’s analysis shall be the following:
“(1) To provide the commission with specific guidance for constitutional revision.
“(2) To recommend to the commission an article-by-article revision of the constitution.
“(3) To report its recommendations to the commission of articles to be revised for the next regular session of the Legislature by December 31 beginning December 31, 2011.”
Act No. 197, § (c).
The Act created a timetable for review of 11 of the 18 articles of the Alabama Constitution.
“(d) The goal of the Legislature is to consider reviewing the Constitution according to the schedule as follows:
“(1) In 2011:
“Article XII, Private Corporations.
“Article XIII, Banking.
“Remove unconstitutional language throughout the Constitution.
“(2) In 2012:
“Article III, Distribution of Powers.
“Article IV, Legislative Department.
*673 “Article IX, Representation.
“(8) In 2013:
“Article I, Declaration of Rights.
“Article V, Executive Department.
“Article XIV, Education.
“(4) In 2014:
“Article VII, Impeachments.
“Article X, Exemptions.
“Article XVII, Miscellaneous.”
Act No. 197, § (d).
Six of the remaining seven articles “shall be excluded from consideration by the commission due to a previous revision of the article or because revision is not considered needed....” Act No. 197, § (e). Finally, “Article XI Taxation is excluded from the consideration by the commission at this time and not subject to the timetable established by this resolution.” Act No. 197, § (f) (emphasis added).
The Act charged the commission with “the following duties and responsibilities”:
“(1) Create a public awareness of and educate the public on the changes recommended.
“(2) Provide the Legislature with recommendations for any changes to the article under consideration.
“(3) Report its findings, conclusions, recommendations, and suggestions to each article to be considered in each House of the Legislature by the third legislative day of each year after 2011.”
Act No. 197, § (g).
Nine years before the passage of the Act, the then director of the Alabama Law Institute identified an article-by-article revision of the constitution according to a multi-year timetable as one approach to revising the 1901 constitution. See Robert L. McCurley, Jr., Constitutional Revision, 63 Ala. Law. 92 (2002). “Under this first approach, approximately two or three articles are considered and revised by the legislature each year. A revision of the entire constitution could be accomplished in the next three years.” Id. at 93. The defendants in this case noted that the commission “serves primarily as an intermediary giving voice to the Alabama Law Institute’s recommendations for constitutional change.” (Defendants’ trial brief of Dec. 12, 2012, p. 4.)
Pursuant to the schedule set out in the Act, the commission prepared proposed revisions of Articles XII and XIII. The legislature approved the proposals, which became statewide Amendments 9 and 10 on the 2012 general election ballot. Both were adopted.

B. Procedural History

On November 5, 2012, one day before the general election, Sandra Bell filed a complaint in the Montgomery Circuit Court seeking declaratory and injunctive relief against five Alabama state officials: the attorney general, the lieutenant governor, the president pro tempore of the Senate, the speaker of the House of Representatives, and the secretary of state. “The goal of [the Act],” Bell stated, “is to allow the Legislature ... to propose a new constitution for the State article by article according to a certain schedule.” According to Bell, statewide Amendments 9 and 10, scheduled for a vote the following day, “would beg[i]n the process of rewriting the entire Constitution of Alabama of 1901....”
The Act, Bell alleged, “violated Section 286 of the Constitution of Alabama of 1901, which provides the exclusive method for the purpose of proposing a new constitution.” [3] She further alleged that submission of the two proposed amendments to *674 the voters, which resulted from implementation of the Act, also violated § 286. Additionally, she alleged that the Act abridged her right as a voter under § 286 “to approve or disapprove the call for constitutional convention.” Bell sought a judgment declaring that the defendants had “acted in excess of their authority as set forth in Section 286 of the Constitution of Alabama of 1901.” She also sought preliminary and permanent injunctions directing the secretary of state not to certify the results of the vote on Amendments 9 and 10. The trial court took no action on Bell’s complaint in the afternoon before election day.
On November 27, 2012, the legislative defendants filed a motion to dismiss Bell’s action, claiming absolute legislative immunity. On December 12, 2012, all the defendants collectively filed a motion to dismiss, reiterating the defense of legislative immunity and arguing that the certification of the election results on November 28, 2012, rendered injunctive relief against the secretary of state moot. Thus, they argued, legislative immunity and mootness combined to render the controversy nonjusticiable. On January 16, 2013, the trial court held a hearing on the motion to dismiss. Bell presented to the court a brief opposing the motion, which is not included in the record; a transcript of the hearing, however, is. She argued as follows:
“I am here about our State Constitution.
[[Image here]]
“[W]e need you to determine whether the Legislature, if they acted within their constitutional ability in putting forth [the Act], in passing that. We don’t believe they were existing within their authority.
“I’ll reference Alabama v. Manley [, 441 So.2d 864 (Ala.1983)]. I have a copy here for you, Judge.”
Referring to Amendments 9 and 10, Bell stated:
“According to [§] 286 in our Constitution, a Constitutional Convention has to be put together to do that, not by the legislative process. They can’t do it this way. It has to be very narrow and limited as to how they can amend it through this method, through the legislative method. It can only be done through the constitutional method according to Manley.
“If you look at what they are planning to do in 2011, it was dealing with private corporations, banking, and even removing things all the way through the Constitution. And they can’t do that according to Manley.”
The defendants, resting on their brief, did not present argument at the hearing. During the hearing the trial court gave no indication of its views on the motion. Later the same day the court granted the motion to dismiss by noting on the bottom of the first page: “1/16/13 Granted. Dismissed.”
On appeal Bell renews her argument that only a constitutional convention called pursuant to § 286 can engage in the broad revision of the Alabama Constitution that the Act contemplates. The defendants in response argue primarily that the matter is nonjusticiable for lack of a proper defendant.[4]

*675
II. Standard of Review

“Where a [Rule] 12(b)(6)[, Ala. R. Civ. P.,] motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57 (Ala.1982).”
Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985). “[I]f under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed.” Id.

III. Justiciability

A. Legislative Immunity

The defendants are correct that ordinarily legislators cannot be sued for their role in enacting legislation. “It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.” United States v. Brewster, 408 U.S. 501, 525, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1971) (quoted in Marion v. Hall, 429 So.2d 937, 944 (Ala.1983) (Torbert, C.J., concurring specially)). Invocation of this principle, however, misses the point. Bell does not attack the process by which the Act was passed. She instead argues that the Act itself is unconstitutional. Surely an unconstitutional act may be attacked in the courts without implicating legislative immunity. A number of Supreme Court cases “reflect a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings.” Gravel v. United States, 408 U.S. 606, 620, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).
The legislators are named as defendants, not for their role in passing the law, but as representatives of the body that is administering the law. The Act creates a Constitutional Revision Commission within the legislature and a procedure for the commission to propose large-scale revision to the constitution. The legislature’s role in administering the revision process under the Act makes the legislators proper defendants, just as the head of an executive agency that implements an unconstitutional law may be sued to enjoin enforcement of the law. Two of the legislators, the speaker of the House and the president pro tempore of the Senate, sit on the commission and have appointed six of the other members. Thus, between themselves and their appointees they account for 8 of the 12 members of the commission. Four legislative committee chairs are ex officio members of the commission. Act No. 197, § (a)(7). The commission is staffed by the Alabama Law Institute, an official advisory body to the legislature whose “reports, studies and recommended publications shall be printed and shall be distributed by the Secretary of State in the same manner as acts of the Legislature.” §§ 29-8-4 and -5, Ala.Code 1975. One of the “duties and responsibilities” of the commission is to “[p]rovide the Legislature with recommendations for any changes to the article under consideration.” Act No. 197, § (g)(2). See Albert L. Sturm, The Procedure of State Constitutional Change — With Special Emphasis on the South and Florida, 5 Fla. St. U.L.Rev. 569, 585 (1977) (“Constitutional commissions were developed initially and *676 have been used primarily, as auxiliary staff arms of state legislative assemblies.”).
In Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D.La.1960), affd, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806 (1961), the federal district court enjoined a legislative committee from assuming control of the New Orleans public schools. The committee and its members claimed legislative immunity.
“The argument is specious. There is no effort to restrain the Louisiana Legislature as a whole, or any individual legislator, in the performance of a legislative function. It is only insofar as the lawmakers purport to act as administrators of the local schools that they, as well as all others concerned, are sought to be restrained from implementing measures which are alleged to violate the Constitution. Having found a statute unconstitutional, it is elementary that a court has power to enjoin all those charged with its execution. Normally, these are officers of the executive branch, but when the legislature itself seeks to act as executor of its own laws, then, quite obviously, it is no longer legislating and is no more immune from process than the administrative officials it supersedes.”
188 F.Supp. at 922. In this case, two of the legislative defendants sit on the commission and are authorized to appoint six other members who together with them constitute a two-thirds majority of the commission. Thus, the legislature is both the law-making and law-implementing agency. The legislature, acting as “executor of its own laws ... is no longer legislating” and thus is not cloaked with legislative immunity. See Ex parte Simpson, 36 So.3d 15, 30 (Ala.2009) (“ ‘[Legislative] immunity applies only to actions that are inherently legislative (policy-making) as opposed to administrative (policy-applying ).’ ” (quoting Grider v. City of Auburn, 628 F.Supp.2d 1322, 1336 (M.D.Ala.2009))); Black’s Law Dictionary 45 (6th ed. 1990) (defining “[a]dministrative acts” as “[t]hose acts which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body_”).
Furthermore, the legislature, when proposing amendments to the constitution, does not act in its law-making capacity. When considering ordinary legislation, a majority vote suffices for passage and gubernatorial approval is required. §§ 63, 125, Ala. Const.1901. Bills proposing constitutional amendments, however, require a three-fifths vote of all members, and no executive approval is needed. §§ 284, 287, Ala. Const.1901. See Gafford v. Pemberton, 409 So.2d 1367,1374 (Ala.1982) (noting “differences between proposed constitutional amendments and acts of the Legislature”); Johnson v. Craft, 205 Ala. 386, 394, 87 So. 375, 381 (1921) (stating that “in proposing amendments to [the constitution], to be voted upon by the electorate, the Legislature is not exercising its other power to make laws”).

B. Mootness

The defendants argue that the claim for injunctive relief to prevent the secretary of state from certifying the results of the vote on Amendments 9 and 10 is now moot. The election is over and the vote was certified on November 28, 2012. However, under Alabama law the holding of an election on a constitutional amendment followed by certification of the results does not preclude judicial inquiry. “The theory that a favorable vote by the electorate, however unanimous, on a proposal to amend a Constitution, may cure, render innocuous, all or any antecedent failures to observe commands of that Constitution in respect of the formulation or submission of proposed amendments thereto, does not prevail in Alabama....” Johnson v. Craft, *677 205 Ala. at 400, 87 So. at 387. In Craft, the Court set aside a “road-bond” amendment in response to a constitutional challenge filed 10 months after the amendment was certified as adopted. Id.
In this case, Bell’s challenge, to Amendments 9 and 10 was filed a day before the election, not 10 months after. If the Act is unconstitutional, then the amendments presented to the electorate in accordance with its plan are invalid. “[Ejvery principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law.” Collier v. Frierson, 24 Ala. 100, 109 (1854). See also Hunt v. Decatur City Bd. of Educ., 628 So.2d 398, 396-97 (Ala.1993) (holding that the rule that “prescribed amendment procedures must be strictly followed ... applies notwithstanding a vote by the electorate in favor of the amendment”).

IV. Merits

A. Amendment versus Revision

Sections 284 through 286 of the Alabama Constitution provide the exclusive modes for amending, altering, or revising the constitution. State v. Manley, 441 So.2d 864, 873 (Ala.1983). Section 284 prescribes the manner in which “[ajmendments may be proposed to this Constitution by the legislature.” Three-fifths of all the members elected to both the Alabama Senate and the Alabama House of Representatives must approve the proposed amendments, after which the proposals must proceed to a vote by the electorate. Id. If approved by a majority of voters, “such amendments shall be valid to all intents and purposes as parts of this Constitution.” Id.
Section 286 prescribes the manner of holding a convention “for the purpose of altering or amending the Constitution of this state.” § 286, Ala. Const.1901. A majority of the legislature must approve “an act or resolution calling a convention,” after which the voters must decide “the question of convention or no convention.” Id.
“[Njothing herein contained shall be construed as restricting the jurisdiction and power of the convention, when duly assembled in pursuance of this section, to establish such ordinances and to do and perform such things as to the convention may seem necessary or proper for the purpose of altering, revising, or amending the existing Constitution.”
§ 286, Ala. Const.l901(emphasis added).
In 1983, this Court considered whether the Alabama Constitution permitted the legislature to submit to the voters a total revision of the constitution as an amendment under § 284 without calling a constitutional convention. “[Tjhe legislature’s power to initiate proceedings toward a new constitution,” the Court held, “is limited to the provisions of § 286.” Manley, 441 So.2d at 876. The proposed “amendment” would have repealed the existing constitution and replaced it with a new constitution. The Manley Court held the act unconstitutional because it embodied a plan to revise the constitution, rather than merely to amend it. Id. at 872-75. “[Tjhe Constitution distinguishes between ‘amendment’ and ‘revisions.’ ... Only § 286, providing for conventions, speaks of ‘revisions’ to the Constitution; § 284, providing for direct proposals by the Legislature, speaks only of alterations or amendments.” Id. at 878 (Torbert, C.J., concurring specially). This “juxtaposition” reveals “that the people intended to reserve to themselves [by means of a constitutional convention] the power of general revision.” Id. at 878-79 (Torbert, C.J., concurring specially).
Section 284 provides that amendments duly approved “shall be valid to all intents and purposes as parts of this Constitu *678 tion.” § 284, Ala. Const.1901 (emphasis added). A replacement document does not become “part of’ the document sought to be replaced because “to destroy is not to amend. A thing amended survives.” Manley, 441 So.2d at 875 (quoting City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61, 65 (1909)). Sections 284 and 286 preclude the legislature from initiating a wholesale revision of the constitution. “[Ojnly conventions have the power to make ... sweeping change.” Manley, 441 So.2d at 875. This Court has distinguished between the “legislative mode” for amending the constitution and the “convention mode” for revising it:
“ ‘[T]he purpose of the legislative mode is to bring about amendments which are few and simple and independent; and on the other hand, that of the mode through Conventions is to revise the entire Constitution, with a view to propose either a new one or, as the greater includes the less, to propose specific and particular amendments to it. Where a few particular amendments only are desired, if the Constitution provides for both modes, the legislative mode should be employed; but if a revision is or may be desired, the mode by a Convention only is appropriate, or ... permissible.’ ”
Manley, 441 So.2d at 869 (quoting John Alexander Jameson, A Treatise on Constitutional Conventions § 574c (4th ed. 1887)).
Constitutional revision can take two forms: (1) replacing the current constitution with a new constitution, or (2) amending the current constitution so substantially as to transform it into a different document. “[A] revision of the whole Constitution [has] the purpose of proposing either, first, a new one, or, secondly, the old one, if on the whole satisfactory, but with such amendments as to the Convention should seem desirable.” Manley, 441 So.2d at 870 (quoting Jameson, § 574c). A § 286 revision, therefore, can occur even if the constitution is not replaced in its entirety.

B. The Express Purpose of the Act is Revision, Not Amendment

The Act appoints the Alabama Law Institute to “analyze the current Constitution of Alabama of 1901, as amended, with a view toward identifying those provisions which are antiquated, unnecessary, or duplicative of other provisions,” and empowers the Institute “[t]o provide the commission with specific guidance for constitutional revision [and t]o recommend to the commission an article-by-aHicle revision of the constitution.” Act No. 197, § (c) (emphasis added). In addition to naming the new commission the Constitutional Revision Commission, the Act used the word “revise” or “revision” with respect to the constitution or its articles a total of four times. See Act No. 197, §§ (c) & (e). A “revision” is “[a] general and thorough rewriting of a governing document in which the entire document is open to amendment.” Black’s Law Dictionary 1434 (9th ed. 2009). The Act never refers to “amending” or “altering” the constitution, only to “revising” it.

C. Only a Convention Can Revise the Constitution

Contrary to the defendants’ argument (Strange’s brief, pp. 13-14), the exclusion of 7 of 18 articles of the constitution from review for possible change does not make the Act any less of a plan to revise the constitution. The Act sets a four-year timetable for legislative review of articles I, III-V, VII, IX-X, XII-XIV, and XVII. Because they were previously amended, or because “revision is not considered needed,” Articles II, VI, VIII, XI, XV, XVI, and XVIII are excluded from consideration by the commission. Act No. 197, §§ (d) & *679 (e).[5] Although specifically assigning only 11 out of 18 articles to the commission for review, the legislature in the process has reviewed every article in the constitution. Instead of serving, therefore, as the Act’s saving grace, the exclusion of seven articles from review by the commission vividly illustrates the fatal flaw of the Act. The legislature, not the people, determined that 11 articles are due for an overhaul but that 7 others should remain untouched. The legislature, not the people, deemed certain unspecified provisions of the constitution to be “antiquated” and “unnecessary.” The legislature, not the people, is now overseeing an extensive and unified program of constitutional revision. The Act thus represents a complete review and revision of the entire constitution. Even in the process of building a new house, “[s]ome of the material contained, in the old house may be used again, some of the rooms may by constructed the same, but this does not alter the fact that you have altogether another or a new house.” Manley, 441 So.2d at 874 (quoting Wheeler v. Board of Trustees, 200 Ga. 323, 330, 37 S.E.2d 322, 327 (1946) (emphasis added)).
The defendants argue that the Act merely authorizes recommendations for amendments (Strange’s brief, p. 5), and that the procedural requirements of § 284 will govern all proposed amendments generated by the commission. (Strange’s brief, p. 11.) In fact, however, the Act, like the act held unconstitutional in Manley, involves “numerous changes on a great many different subjects.” 441 So.2d at 873. Such a global plan of revision can be the fruit only of a § 286 convention, not of the legislative-amendment process under § 284. See id. at 868-69. By undertaking to massively revise the constitution, the legislature “circumvent[ed] the people’s right to vote initially on the question of whether to call a constitutional convention, prior to an election regarding the recommendations of such a convention.” Manley, 441 So.2d at 872 n. 8. Additionally, as Bell notes, the people lost their ability “to have input in selecting the drafters of the proposed new constitution.” (Bell’s brief, p. 18.)
Stretching out the revision process over a number of years by submitting to the people two or three revised articles per general election under the amendment procedures of § 284 does not change the reality that a near total revision of the constitution is occurring. The Act’s design to achieve large-scale revision by a carefully planned series of amendments is an artful evasion of the constitutional-convention process. The legislature’s assumed prerogative to initiate and control the process of constitutional revision is a notable and disturbing innovation. By wresting the convention process from the people, the legislature has made itself the paramount mechanism of constitutional revision.[6] See Robert F. Williams, Are *680 State Constitutional Conventions Things of the Past? The Increasing Role of the Constitutional Commission in State Constitutional Change, 1 Hofstra L. & Pol’y Symp. 1, 4 (1996) (noting that constitutional commissions have been used “as devices for assisting legislatures in avoiding conventions, and thus retaining control of constitutional change”); James A. Henretta, Foreword: Rethinking the State Constitutional Tradition, 22 Rutgers L.J. 819, 831 (1991) (noting that constitutional commissions “represented a diminution of activist popular sovereignty. In a carefully calculated fashion, these maneuvers removed power from the hands of the citizenry. The result was a constitution revised as much through administrative procedures as through constitutional debate and political compromise.”); Albert L. Sturm, The Development of American State Constitutions, 12 Publius: Journal of Federalism 57, 84 (1982) (“The mounting popularity of constitutional commissions is attributable mainly to them general acceptability to state legislators who prefer to rely on bodies over whose proposals they have control.”); W. Brooke Graves, State Constitutional Law: A Twenty-Five Year Summary, 8 Wm. & Mary L.Rev. 1, 10 (1966) (stating that constitutional commissions have “‘one inherent and fatal weakness in that their every act is measured in terms of what they believe the legislature will accept’ ” (quoting Bennett M. Rich, Convention or Commission?, Nat’l Mun. Rev. 133-39 (March 1948))). Almost 50 years ago two students of constitutional commissions observed:
“The crux of the matter is ultimate legislative control. Legislative bodies are jealous of their constitutional amendment and revision prerogative. When they are presented with an alternative that enables them to preserve this prerogative, in contrast with one, such as the constitutional convention, over which their powers are far more limited, the choice is obvious to most lawmakers.”
Albert L. Strum and James B. Craig, Jr., State Constitutional Commissions: Fifteen Years of Increasing Use, 39 State Gov’t 56, 63 (1966).
Sections 284 and 286 require that a program of total revision, such as the Act mandates, must arise from the citizens of Alabama in a constitutional convention, and not from a legislatively created advisory commission. “Revision by commission” is an unauthorized method to propose to the people of Alabama a comprehensive rewriting of the constitution. The legislature has only the power to amend the constitution, not to revise it. “In proposing amendment of the Constitution the legislature does not have the plenary powers it has in enacting laws but only the powers specifically delegated to it.” Manley, 441 So.2d at 878 (Torbert, C.J., concurring specially) (quoting Bourbon v. Governor of Maryland, 258 Md. 252, 257-58, 265 A.2d 477, 480 (1970)). The people delegated to the legislature only the power to propose “amendments which are few and simple and independent.” Manley, 441 So.2d at 869 (quoting Jameson, § 574c). “The people of this State ... have decreed that they reserve, in revising or replacing the Constitution, a role much more active than merely passing upon a proposal someone else has written.” Id. at 877 (Torbert, C.J., concurring specially). The effect of the Act is to achieve article by article what the constitution prohibits the legislature from doing all at once. If, instead of placing all the courses of a *681 banquet on the table at the same time, they are served individually in sequence separated by intervals of time, the gastronomic result is still the same, even though the latter presentation may appear easier to digest.
If the legislature inherently possessed plenary power to propose a massive revision of the constitution, then § 284, the provision authorizing the legislature to propose discrete amendments, would be superfluous. The presence of § 284 in the Alabama Constitution, however,
“ ‘fights against the contention that the general grant of legislative authority bears in its broad arms, by implication, any power to formulate and submit proposed organic law, whether in the form of an entire and complete instrument of government to supersede the existing one, or a single amendment. For if the General Assembly has the greater power, unfettered power [of revision], under the general grant, what necessity could there have existed for giving the lesser, special power [of amendment], with the checks and limitations accompanying it?’ ”
Manley, 441 So.2d at 872 (quoting Ellingham v. Dye, 178 Ind. 336, 356, 99 N.E. 1, 8 (1912)). A construction of the constitution that renders one of its provisions superfluous conflicts with this Court’s acknowledgment that “[t]he Constitution contains no idle assertions, no meaningless language, no ephemeral purpose.” Johnson v. Craft, 205 Ala. at 399, 87 So. at 386.

V. Conclusion

“[T]he legislature’s power to initiate proceedings toward a new constitution is limited to the provisions of § 286.” Manley, 441 So.2d at 876 (emphasis added). A constitutional convention may convene only after the voters have approved a legislative act or resolution calling for the convention. Thus, a legislature desirous of revising the Alabama Constitution has one, and only one, option at its disposal: “pass[ ] an act or resolution calling a convention.” § 286, Ala. Const.1901. The treatise on constitutional conventions relied on in Manley states that “whenever a Constitution needs a general revision, a convention is indispensably necessary.” Jameson, § 219. As this Court has stated: “Section 286 of the Constitution of 1901 does not vest in the legislature the power to call a constitutional convention.” Opinion of the Justices No. HI, 263 Ala. 151, 81 So.2d 688, 689 (1955). The legislature may not evade this limitation on its power through the ingenious mechanism of an in-house constitutional convention dubbed a “Constitutional Revision Commission.”
Creating a Constitutional Revision Commission and granting it the responsibility to propose an article-by-article revision of the constitution exceeds the scope of the legislature’s authority under §§ 284 and 286 of the Alabama Constitution. Because the Act is likely unconstitutional as a legislative usurpation of the exclusive and sovereign right of the people to revise the constitution through a convention called for that purpose, I would reverse the order granting the motion to dismiss and remand the case for further proceedings. Bell has stated a cognizable theory of law and therefore may possibly prevail on her complaint. Nothing more is required at the pleading stage. Additionally, because legislative immunity does not shield the named legislators from being defendants in this matter, and because Bell’s challenge to Amendments 9 and 10 is not moot, questions of justiciability, in my view, do not defeat Bell’s complaint.
This Court has recognized “the settled principle that the people have forbidden the Legislature from conducting itself in a manner inconsistent with their constitution and when it does, it is incumbent upon the judiciary to nullify a legislative enactment *682 contrary to the constitution.” Rice v. English, 835 So.2d 157, 162 (Ala.2002). That principle has full application to the prerogative of the people to call a constitutional convention, “the great agency through which democracy finds expression.” Henretta, Rethinking the State Constitutional Tradition, 22 Rutgers L.J. at 829 (quoting J. Dealey, Growth of American State Constitutions 258 (1915)).

. The Alabama Law Institute is "an official advisory law revision and law reform agency of the State of Alabama.” § 29-8-l(a), Ala. Code 1975.

. To call a constitutional convention, Article XVIII, § 286, Ala. Const.1901, requires "a vote of a majority of all the members elected *674 to each house” followed by a majority vote "of all the qualified electors of die state.”

. Justice Shaw in his special concurrence implies that because the Act is a legislative resolution and not a law, it is not subject to a constitutional challenge. However, in Gunter v. Beasley, 414 So.2d 41 (1982), this Court considered at length a challenge to the constitutional and statutory validity of two resolutions passed during the 1971 Regular Session of the Alabama Legislature, holding ultimately that they "do not offend any of the constitutional and statutory provisions against which the State challenges their validity." 414 So.2d at 49.

. Although the comprehensive revision of the judicial article in 1973 and the suffrage and elections article in 1996 may seem to establish a precedent for using § 284 in place of calling a § 286 constitutional convention, "a few sporadic offenses against an unambiguous constitutional mandate will not suffice to establish the basis for a subversion of its terms.” Craft, 205 Ala. at 402, 87 So. at 388-89.

. We may search in vain for any meaningful term-limits provision in the legislature’s new proposed constitution. The commission apparently considered, but rejected, a term-limits provision. Article IV, § 46, Ala. Const. 1901, which defines the term of office for legislators, has no term limits. In its Tentative Final Revision of November 11, 2012, the commission lists as an "alternative” a term limit of "20 years of total service.” Subcommittee minutes indicate that this proposal was rejected. The. notes to the draft revision of § 46 state: “Commission members requested a term limit proposal be included but was rejected by the Subcommittee.” By contrast, a citizens commission not authorized by the legislature proposed to "[ljimit service of any *680 legislator to three terms per chamber.” Jim Bennett & Sallie C. Creel, Final Report: Alabama Citizen's Commission for Constitutional Reform, 33 Cumb. L. Rev. 597, 609 (2003).